The State of Missouri ex rel. Wilcox, Relator, v. Draper, State Auditor.

———————•———————

The State of Missouri *ex rel.* Horace Wilcox, Relator, *v.* Daniel M. Draper, State Auditor, Respondent.

1. *Auditor, State — Claim of public printer — Superintendent public schools — Report of house committee on —* Mandamus, *etc.—* In *mandamus* by the public printer against the State auditor for a balance claimed to be due from the State for printing one of the reports of the superintendent of public schools, respondent's return showed that the house of representatives had refused to authorize payment of the amount claimed until a committee had investigated the work and made their report thereon; and that said committee had reported commending the auditing of the account, but that the report had never been acted upon and approved by the house; and further, that by law payment of the amount claimed was to be made from a contingent fund which had been exhausted.

   *Held,* that *mandamus* would not lie to compel the auditing of the claim. 1. It was within the discretion of the house to control its contingent fund, and any order that it might make in reference thereto was binding upon the State officers, although the order took the shape of a resolution and not of an act of Legislature. 2. Although the committee's report had been made, this fact would not authorize payment, since the report contained only a recommendation which still remained to be acted upon.

   *Held,* further, that it would be useless to award a writ compelling the auditor to issue a certificate of indebtedness. The only object of section 32, p. 1337, Wagn. Stat., was to bring the claim audited to the attention of the Legislature, and that object was accomplished by the report of the committee.

*Petition for Mandamus.*

*W. H. Blodgett*, for relator.

WAGNER, Judge, delivered the opinion of the court.

The relator states that he was duly elected and qualified as public printer for the State, and that while exercising and performing the functions of that office, the house of representatives ordered him to print and bind in book form 7,000 copies of the fifth annual report of the superintendent of public schools, and that in pursuance of that order he printed, bound and delivered the same in all respects as was by law and the said order required; that his accounts for the printing and binding thereof were, in pursuance of law, carefully and strictly examined by the committee on printing, and also by the committee on accounts of the house of representatives, and found to be correct and just; and that the presiding officer of the house thereupon certified to the respondent, as State auditor, that the sum of $7,942.90 was justly due to the relator from the State on account of the work aforesaid. It is then alleged that it was the duty of the respondent to draw his warrant upon the treasurer for that amount in favor of the relator, or, in the event that there was no appropriation on which to draw the same, then it was his duty to audit the account and give to the relator a certificate of indebtedness; and as the respondent refuses to act in the premises, an alternative writ of *mandamus* is asked. Accompanying the writ is an exhibit showing that the whole amount of the work comes to $17,942.90, and that the sum of $10,000 has been paid thereon, leaving the balance claimed as above stated. Upon this exhibit or account is a certificate in due form, signed by the chairman of the committee on printing and the chairman of the committee on accounts, stating that the bill is correct and the amount claimed is due. Appended thereto is the proper certificate made by the presiding officer of the house.

The respondent in his return states that the house of representatives, after having ordered the work, on the 18th day of March, 1871, passed the following resolution:

" *Resolved*, That the committee on printing is hereby instructed not to audit the account of Horace Wilcox, State printer, for the publication of the fifth annual report of the superintendent of public schools of the State of Missouri to the twenty-sixth general assembly, until the first Monday in December, 1871, at which time, or as soon thereafter as said committee can conveniently meet, the said committee is hereby authorized and instructed to meet in Jefferson City, with the power to send for persons and papers, and to investigate everything pertaining to said work, and report thereon at the adjourned session, and that until such report has been made, the said committee shall not allow a certificate of more than $10,000 on said account in favor of the public printer."

The return further sets forth that the committee provided for in the foregoing resolution did meet and investigate everything pertaining to the work, and that they made their report stating that the work was done in accordance with law, that the bill was correct, and that there was no sufficient reason for refusing its full payment, and they recommended that the committee on accounts be instructed to audit and allow the account of the relator, and issue the proper certificate for the balance due on the same, but that said report was never acted upon and approved by the house; and, as a further defense, respondent states that the payment for the work must come from the contingent fund of the general assembly, and that that appropriation is exhausted. To this return the relator demurs.

The question of the correctness of the account is not before us, and the real point is, what operation and effect shall be given to the resolution forbidding the officers to audit the claim beyond a certain amount. The resolution permitted the payment of ten thousand dollars, and that amount was paid and duly credited; but the balance, which is the matter in controversy, was prohibited from being paid until the further orders of the house. The law in force at the time this work was ordered provided that the accounts of the public printer for work for either house of the Legislature should be examined by a committee, and whatever was due should be certified by the presiding officer of the house

for which the work was done, to the auditor, and thereupon the auditor should draw his warrant on the treasury in favor of the public printer for the amount thus certified. (Wagn. Stat. 1132, § 27.) But the case shows that no warrant could be drawn under that section, for there was no appropriation to meet the payment. But it is contended that if an absolute warrant for the payment of money could not be issued by the auditor, then it was his duty to give the relator a certificate of indebtedness. The statute declares that "in all cases where the law recognizes a claim for money against the State, and no appropriation shall be made by law to pay the same, the auditor shall audit and adjust the same, and give the claimant a certificate of the amount thereof, under his official seal, if demanded, and shall report the same to the general assembly with as little delay as possible." (Wagn. Stat. 1337, § 32.)

This section has but one object in view, and that is to inform the Legislature of an outstanding claim against the State in order that an appropriation can be made to satisfy its payment. But in the present case no such thing is necessary, for the very matter involved in the controversy is before the Legislature, and so far they have refused to act. The very evidence, namely the certificate of the presiding officer upon which the auditor is authorized to act, is before the house, and the auditor's certificate would give it no additional force.

Whilst in American legislation a joint resolution regularly passed is regarded as a bill (Cush. Law and Practice in Legislative Assemblies, § 2403), yet we willingly concede that a simple resolution passed by one house only cannot abrogate, modify or affect a general law. But this work was ordered to be paid for out of the contingent fund of the house, and by the provisions of the law each house has exclusive control over its own contingent expenses. (Wagn. Stat. 901, § 12.) It being within the legislative province of the discretion of the house to control the fund, any order it may make in reference thereto is binding upon the officers.

The point is urged that the resolution was obligatory only until the committee reported, and that when the report was received

it had spent its force. But this certainly is not the proper construction. The report contained a recommendation, and until it was acted upon the proceeding remained just where the resolution left it.

It would be useless to award a writ to compel the auditor to issue a certificate of indebtedness. That would only bring the matter to the attention of the Legislature, and it is there now and still pending. The writ is never issued except where it can vindicate a right or subserve some useful purpose. No judgment that we could give would be binding on the Legislature. The appeal must be made to that body for the proper relief, and cannot be granted through the agency of the courts.

The other judges concurring, the demurrer will be overruled.