<div style="float:right">
58  17<br>
99  592<br>
58  17<br>
156  292
</div>

OF

## THE STATE OF MISSOURI

### OCTOBER TERM 1874 AT ST. LOUIS.

[CONTINUED FROM VOL. LVII.]

---

WM. HARPER, *et al.*,Respondents, *vs.* WM. C. MANSFIELD, *et al.*,
Appellants.

1. *Administrator, sale by—Purchase by administrator at, will be held in trust for estate, when.*—The statute requiring the appraisement of land held by an administrator before he can purchase the same, has no application to his purchase of land sold under deed of trust given by the decedent. But he cannot in such case speculate on the interests of the creditors and distributors of the estate, and sacrifice them to his own individual interest. Such a purchase would be presumed to be for the benefit of the estate; and at all events would be closely examined by a court of equity, if questioned by those interested in the estate.

And where it appeared that although nominally made by the trustee named in the deed of trust, the sale was in fact prompted by the administrator, the latter would be regarded in a court of equity as the vendor, and his purchase would be held to have been made in trust for the benefit of the estate.

2. *Mortgage and deed of trust—Sale—Trustee must be present, etc.*—The trustee in a deed of trust must be present in person at the trust sale and watch over it, and adjourn the sale, if necessary, in order to prevent a sacrifice of the property. And no one can do it in his stead, unless empowered in the instrument conferring the trust. (Graham vs. King, 50 Mo., 24.)

2—VOL. LVIII.                    17

*Appeal from Audrain Circuit Court.*

*Ira Hall,* for Appellants.

I. Defendant, Mansfield, had the right to purchase the land at the sale. He was not trustee for the sale of the land. The rule that a trustee cannot purchase at his own sale of property of which he is trustee, has no application to him. The rule is that the trustee cannot purchase from himself. He cannot sustain the two characters of purchaser and seller. But defendant, Mansfield, was in no way connected with the trust nor had any control or direction of the sale. (Hill Trust., §.535, [3rd Ed.] ; 2 Wash. Real Prop., [2nd Ed.] pp. 176, 177, 210 ; Dempster vs. West, Chic. Leg. News, vol. 6, p. 335 ; 2 Sugd. Vend., 112, 126, note.)

*Craddock & Musick,* for Respondents.

I. Defendant, Mansfield, held a fiduciary relation towards the creditors of his intestate, and was under obligation to to look after their interests with the most conscientious scrupulousness. He could not speculate or make a profit at their expense. Any purchase of property of his intestate at a sacrifice would be for their benefit, and when, after such purchase of his intestate's lands, he attempted to take the profits of the purchase to himself and deny the rights of the creditors and his trusteeship for them, it was fraud of the most patent character. (2 Hill. Torts, ch. 26, §§ 1, 2.)

Napton, Judge, delivered the opinion of the court.

This proceeding was instituted by the creditors of Thos. B. Mansfield, who died in Oct., 1871, to set aside the sale of the decedent's farm made under a deed of trust given by said Mansfield to secure the purchase money. The plaintiffs were creditors to the amount of six or seven hundred dollars, and their claims had been allowed against the estate and placed in the 5th class.

Mansfield, the decedent, had in Feb'y, 1868, purchased a tract of land lying in Audrain County, near Mexico, of 100

acres, at the price of a thousand dollars, of a lady named Breckenridge, and had obtained a deed for the same and executed his notes for this sum, and to secure them had given a deed of trust on this land, making one Hook, who is one of the defendants in this case, trustee, with authority to sell on non-payment, and on specified notices and at a specified place. Miss Breckenridge was also made a party defendant in this case.

Mansfield paid $200 on those notes in 1870, and died in 1871, and the principal defendant, W. C. Mansfield, his brother, was appointed administrator.

The 100 acres of land mortgaged to pay this indebtedness to Breckenridge, was the only land owned by the deceased; and the personal assets were insufficient to pay off the creditor in the 5th class, after the payment of such claims as had priority and the widow's claim under the statute.

The petition, after stating the above facts, proceeded to charge that the defendant, W. C. Mansfield, for the purpose of defrauding the creditors aforesaid, without the knowledge of Hook, the trustee, and without the consent or request of Breckenridge, the *cestui que trust*, procured an advertisement in the name of Hook, to be inserted in the newspapers printed at Mexico, offering the said land for sale on the terms, and at the place, and in the mode provided for in the deed of trust; that afterwards, and on the day named in the advertisement, he fraudulently had the same put up for sale at the hour of 11 A. M., and cried off to the highest bidder by an auctioneer named Rodman; that said W. C. Mansfield became the purchaser for one thousand dollars, and fraudulently procured a deed from said trustee, Hook.

All this is charged to have been done by said Mansfield, administrator aforesaid, in order to get the property at an under value; and it is claimed that he paid off the note still due on the mortgage to Breckenridge for $800 by giving his notes to said Breckenridge, and the remainder of his bid by giving a receipt to Hook as administrator for a claim said Hook had against the estate for $108.34, and to secure his

notes to Breckenridge, he gave her a deed of trust on the same land, and made said Hook trustee. It is alleged that the land was worth ($2,000) two thousand dollars.

The answer of defendant, W. C. Mansfield, denied all fraud, asserted that he had nothing to do with the sale, except to bid for the land; asserts that the land brought a full price and more than it would at the time of the answer; and avers that he bought the land, not as administrator, but on his own individual account.

The testimony in the case need not be stated in detail. It clearly appears that this sale under the deed of trust to Hook was not made at Hook's instance nor at the instance of the beneficiary, Miss Breckenridge. It seems to have been suggested and arranged by a lawyer named Edwards, perhaps on the direction of his client, the defendant, who was administrator of the estate and who doubtless consulted Edwards on the subject. The year had elapsed since the death of the mortgagor, and the mortgagee or trustee had an undoubted right to sell. It does not appear that the auction was conducted in any way unfairly, nor does it appear that it was sold at an unreasonable hour. It was sold at 12 m. and the deed of trust did not specify any hour of the day when the land was to be sold.

A great many witnesses were examined as to the value of this land, and as usual in such cases, opinions varied very much; but one of the witnesses swore he came to Mexico prepared to bid fifteen hundred dollars for it, and another that he offered defendant, after the sale, five hundred dollars for his bargain, and it may be concluded therefore, that the land was not sold to the best advantage.

The decree of the court was based on a special finding of facts, in substance these. The court finds, in reference to the purchase of decedent, the deed of trust to Hook, and the death of the purchaser, Mansfield, and the appointment of his brother, the defendant, as administrator, and the debts and assets of the estate, as heretofore stated in regard to undisputed facts, and then proceeds to find, that "said defend-

ant, W. C. Mansfield did, with the purpose of cheating and defrauding the creditors of said estate, fraudulently procure to have said real estate advertised over the name of, and without the knowledge or consent of, said defendant, said T. Hook, as such trustee, to be sold at the court house door in the city of Mexico, in the county and State aforesaid for cash, on the 30th day of November, 1872, by one Benj. Rodman, auctioneer; that said defendant, Hook, as such trustee in said deed of trust, was not present at said sale of said real estate, and gave no orders or directions, but that said W. C. Mansfield, defendant, administrator of said Thomas Mansfield's estate, with his attorney procured the' said auctioneer and ordered him to sell for cash, and that there were only four or five persons present at said sale; that said sale was made under orders and directions of said defendant, W. C. Mansfield and his attorney, S. M. Edwards, and at a much earlier hour in the day than is usual and customary in public sales of sheriffs and trustees in the county of Andrain; and that said W. C. Mansfield did, at such sale, fraudulently and with intent to defraud the creditors of said Thomas Mansfield's estate, buy all of said real estate for the sum of one thousand dollars. And the said defendant, W. C. Mansfield, did then forthwith send for said defendant, Hook, trustee, about four or five o'clock P. M., on the day of sale, and procure the said Hook, as such trustee, to make a deed to him, W. C. Mansfield, and did then and there, without the knowledge of said Hook, make a deed to said Hook, to secure said Breckenridge, etc.; that said land was at the time of said sale reasonably worth $1,500, etc.; that this sale was a fraud on the creditors, and, therefore, the court decrees the sale and deed to W. C. Mansfield null and void. And it was further ordered that Hook proceed to sell the land again at a time specified in the decree. And said W. C. Mansfield, defendant, was ordered to pay the costs.

The testimony in the case clearly established all the main facts found by the court; but the inference that they constituted fraud on the part of the defendant, the administrator, is denied.

If we agree with the court below, that the facts and circumstances attending this sale show a fraudulent intent on the part of the defendant, and a successful pre-concerted plan to get the title of this land at an under value, the question concerning his right to buy as the administrator can be of no importance.

The testimony clearly shows, that neither Hook, the trustee, nor Breckenridge, the *cestui que trust*, had anything to do with the advertisement or sale, though both acquiesced in it, after it was made. Indeed, as Miss Breckenridge secured the money due her, and Hook had no interest whatever in the matter, there was no reason why they should object. It is clear also, that the land was bought for less than it could have been sold for at the time of the sale. The day was cold and stormy and the hour selected for the auction may have been untimely. But all the facts in the case, excluding the particular position occupied by the defendant as administrator, would hardly have authorized the decree.

The interest of buyer and seller is antagonistic, as the buyer's is to get property at the lowest price, and the seller's is to make it go as high as possible, and therefore, trustees with authority to sell, are not allowed to buy. Hence a mortgagee, who is invested with a power of sale, is not allowed to buy, but his purchase is not absolutely void, but simply leaves the property subject to redemption at a reasonable time thereafter, and if acquiesced in will be binding. This doctrine, however, is at the base of the rule laid down by courts of equity, in considering the right of trustees to buy property, which they are authorized to sell.

This rule, however, does not apply to executors or administrators here because our statute allows them to buy, but guards against the dangers of such purchases, by requiring an appraisement, of the land sold, by disinterested persons.

The present is not one of a purchase by an administrator of land sold by him in that capacity. It was a purchase made by him at a sale under a mortgage or deed of trust which he could not prevent, and which he, as administrator, had no

authority to hasten. But as he was a trustee for the distributees, heirs, and creditors of the estate, it was certainly his duty to see that the interests of heirs, distributees and creditors should not be sacrificed, and he could not speculate upon these interests and sacrifice them to his individual interest. Such a purchase would be presumed to be for the benefit of the estate, and at all events, would be closely examined by a court of equity, if questioned by those interested in the estate. And certainly, if it appeared that though nominally the sale was made by the trustee in the mortgage or deed of trust, it was in fact prompted by the administrator, the latter would be regarded as the vendor in a court of equity, and his right to purchase would be upon the same basis as if he himself had been the vendor.

And the facts found by the court in this case and sanctioned by the evidence, seem to warrant the conclusion, that this sale was set on foot solely by the administrator or his attorney. It is true that the trustee acquiesced when informed by the defendant's attorney that "they had concluded to sell under the deed of trust;" but this was, as the trustee states in his testimony, on the supposition that the beneficiary in the deed had been consulted and had ordered the sale. The evidence of Miss Breckenridge, the beneficiary, however, shows that she was not consulted; that considering her debt safe, she had no wish to have the land sold.

The facts disclosed in this case, moreover, show that the trustee was not present at the sale, and this court has decided expressly in Graham vs. King, (50 Mo., 24,) that "he must be present in person, and watch over the sale and adjourn it, if necessary, to prevent a sacrifice of the property; and no one can do it in his stead unless empowered in the instrument conferring the trust."

But the prominent fact is, that the administrator of the estate who is, in the eye of the law, regarded as a trustee for distributees and creditors, prompted the sale through his attorney. There was in this no impropriety, if his object was merely to relieve the estate of the mortgage. But he was

the only bidder; and it might be inferred that he was bidding in the interest of the estate of which he was administrator. A court of equity would so regard the purchase. As it was his duty to protect and advance the interest of the distributees and creditors, his purchase would be regarded as for their benefit. His disclaimer of such intention merely calls in question the propriety of his instigating the sale, when neither the trustee or *cestui que trust* desired it.

The Circuit Court ordered a re-sale by Hook, the trustee, in the deed of trust. As the testimony shows a depreciation in the value of the land since the purchase, the decree may result unfavorably to plaintiff.

But as no objections are made here, we will affirm the judgment and remand the case for a new order, the time for the re-sale having elapsed. The other judges concur.