Clark, et al. v. Drake, et al.

———o———

JNO. B. CLARK, *et al.*, Appellants, *vs.* MILTON B. DRAKE, *et al.*, Respondents.

1. *Equity—Mortgage sale—Purchaser under—Action against, to divest title—Circumstances which will sustain—Excess of judgment—Inadequacy of price—Purchase by administrator–Tender–Allegations, sufficiency of.*—The owner gave a mortgage on certain land to secure the payment of $2,300, of which sum, however, only $300 was received. The remainder, which was to have been paid from time to time in instalments, was, in fact, never paid. On the death of the mortgagor the brother of the mortgagee became his administrator, and, with knowledge of the amount paid, permitted the assignee of the mortgage debt—who was also brother-in-law of the mortgagee—to obtain judgment on the mortgage debt for $3,421, and at the sale under said judgment, the administrator, while acting as such, purchased the property for $520, which was about one-tenth of its value. It appeared that, at the time of said judgment and sale, all the heirs were minors, and that the estate owned lands other than those mortgaged, and owed no other than the mortgaged debt.

*Held* that, although the mere omission to apply to the proper court for power to sell the land for the payment of the debt (Wagn. Stat., 94, § 8), might not have rendered the administrator chargeable for the consequences of the sale under the foreclosure, and independent of the question as to his power to purchase without thereby rendering himself a trustee for the creditors

or the heirs, the fact of the great excess for which judgment was rendered, the inadequacy of price paid at the sale thereunder, the knowledge and relationship of the parties, and the other attendant circumstances, would, on bill for that purpose, brought by the heirs, warrant a decree divesting his title, and vesting it in the heirs.

*And held* in such suit, on demurrer, 1st, that an allegation in the petition that " the judgment was obtained on a fraudulent mortgage for the want of the consideration money mentioned in the same,"-sufficiently set out the facts which made the mortgage fraudulent; 2d, that it was not necessary to make the assignee of the debt, who was plaintiff in the foreclosure proceedings, a party to the bill; 3d, that the petition need not charge that the administrator paid for the land purchased by him out of the assets belonging to the estate; 4th, that if plaintiffs tendered all that they admitted to be due, the chancellor should not deny them relief on the ground of the insufficiency of the tender, but should grant relief only on their doing what equity required.

### *Appeal from Polk County Circuit Court.*

*Lay & Belch*, for Appellants, cited: 1 Sto. Eq. Jur. § 323 ; 2 Id., §§ 1211, 1261, 1265 ; 2 Washb. Real Prop. marg. pp. 209–13 ; Boardman vs. Florey, 37 Mo. 559 ; Beal vs. Harmon, 38 Mo. 435 ; Woodlee vs. Burch, 43 Mo. 231 ; Thornton vs. Irwin, Id. 153 ; Grumly vs. Webb, 44 Mo. 444 ; Dohrman vs. Copelin, 47 Mo. 76 ; Chesley vs. Chesley, 49 Mo. 540 ; Hunter vs. Hunter, 50 Mo. 445 ; Mechaud vs. Girod, 4 How. [U. S.] 503 ; Wagn. Stat. p. 84, §§ 1, 2 ; p. 94, § 6; p. 98, § 32.

*Phillips & Vest*, for Respondents, cited : Barker vs. Barker, 14 Wis. 131–49 ; Wood vs. Hitchcock, 20 Wend. 48, 49 ; Bellows vs. Smith, 9 N. H. 285–87 ; Loring vs. Cook, 3 Pick. 48 ; 2 Pars. Cont. 155 ; 1 Sto. Eq. § 409 ; 35 Mo. 71 ; Wood vs. Jackson, 8 Wend. 36–7 ; Hildreth vs. Sands, 2 Johns. Ch. 36, 49, 50 ; Pepper vs. Carter, 11 Mo. 540 ; Rhodes vs. Outcalt, 48 Mo. 372–3.

NORTON, Judge, delivered the opinion of the court.

This suit was instituted by plaintiffs for the purpose of divesting defendants of title to certain lands in Benton county, and having it vested in plaintiffs. The only question before us is whether the court below erred in sustaining the demurrer to the petition and entering judgment thereon.

Stripping the petition of all surplusage, and disregarding the rambling manner in which the allegations are made, it substantially states the following facts : that James A. Clark in the year 1860, was the owner of about four hundred acres of land in Benton county ; that on the 28th day of April, 1860, he executed to one Jesse Drake a deed of mortgage, conveying to him said lands to secure the payment of $2,300 ; that at the time of the execution of the mortgage only three hundred dollars of the above sum was received by Clark, and that it was the agreement that the remaining $2,000 was to be advanced by Drake to Clark as the latter might require ; that Clark the next day after the mortgage was made, started for the State of Oregon to be absent two or three years, and that no part of the remaining $2,000, had at any time ever been advanced to Clark by Drake ; that Clark died in the State of Oregon in 1864, leaving plaintiffs as his only heirs, who were all minors at the time of his death ; that one E. S. Drake, the brother of Jesse Drake the mortgagee, administered upon the estate of said Clark in Benton county in the year 1864 ; that Jesse Drake after the maturity of the note, transferred the same to his brother-in-law, Charles Stewart, for the consideration of $500, and that Stewart had full knowledge that only $300 and interest was due on the same ; that E. S. Drake, administrator of said Clark, with knowledge of the fact that only $300 and interest was due on said note and mortgage, permitted Stewart, the assignee, on the 11th day of March, 1865, to take a judgment thereon in the circuit court of Benton county against him as administrator for the sum of $3,421 ; that execution issued on said judgment, and the lands described in the petition were sold by the sheriff of said county, and that Drake while acting as administrator became the purchaser of the same at the price of $520, and took a sheriff's deed to himself ; that there was also sold under said judgment and execution a lot in the town of Warsaw for the sum of $140 ; that said E. S. Drake died before the institution of the suit, and that defendants are his only heirs ; that said Clark at the time of his death owned other lands besides those mentioned in the mortgage, and that the debt mentioned in the mortgage was the only debt he owed ; that

plaintiffs had tendered the sum of $540 to defendants less $400 for waste committed by defendants. The objections to the petition, specified in the demurrer, are, that it alleges the mortgage to be fraudulent without stating the facts which make it so ; that plaintiffs are estopped from asserting that the mortgage or any part of it is fraudulent; that Stewart is not made a party to the suit, and that it does not aver that the administrator bought the land with assets belonging to the estate.

The statement of the petition "that the judgment was obtained on a fraudulent mortgage for the want of most of the consideration money mentioned in the same," was intended by the pleader, from the connection in which it appears, to apply to the fraudulent use made of it by Stewart the assignee, in demanding a judgment, and by Drake the administrator in permitting a judgment to be rendered on it for the full sum of $2,300 and interest, when both of them knew that such judgment should only have been for $300 and interest. In this view of it, not only could Clark, the ancestor of plaintiffs, have resisted such a proceeding, but the administrator who stood in his shoes, having knowledge of all the facts, was derelict in his duty in not resisting it. Nor do we then see any necessity for making Stewart a party, as the suit is not brought for the purpose of vacating the judgment, but to take the title of land from the defendants, acquired by them under circumstances which authorize the interposition and interference of a court of equity.

As we view the facts of the case the petition is not defective in failing to charge that the administrator paid for the land out of the assets belonging to the estate.

The facts admitted by the demurrer show that the administrator, whose duty it was to protect not only the interests of the creditors but of all parties interested in the estate, consented or permitted in fraud of the rights of creditors and heirs a judgment to be rendered against him as administrator for the sum of $3,421, when he knew that the true amount of judgment, if the debt bore only six per cent. interest, which from the statement of the petition was all that it did bear, should have only been for $300 with interest for about five years and a half and aggrega-

ting the sum of $398. It also shows that after this neglect of duties the administrator upon a sale made by the sheriff under an execution issued upon the judgment, to the rendition of which he had wrongfully assented, became the purchaser of all the land for $520, that being only one-tenth of its value. This concurrence of the administrator in the rendition of the judgment, fraudulent so far as he is concerned, to say the least of it, puts him in such a position that a court of equity will not allow him to profit thereby, as against those who have been defrauded thereby. (1 Story, § 423.)

Now if under the law, Drake, the administrator, had applied to the proper court as he had a right to do under § 6, (Wagn. Stat. p. 94,) for the sale of other lands to redeem the lands mortgaged, and the court had, under section 8 of the same statute, ordered a sale of the lands mortgaged, then he would have been charged with the duty of selling them and could not have purchased at such sale except under the restrictions which the statute imposes. This he did not do, but on the contrary permitted a fraudulent judgment, with knowledge of the facts rendering it fraudulent, to be rendered against him, and under that judgment became the purchaser. Drake, the administrator, chose to abandon his true position and become a purchaser instead of a vendor, and instead of transferring the estate to another at a fair price, with all the guards our statutes throw around administrators' sales, he had it transferred to himself at sheriff's sale at one-tenth of its value. The mere omission of the administrator in not applying as he might have done to the probate or county court of Benton county to sell the land to pay this debt, might not of itself render him chargeable with the consequences. We think it would not; but when he becomes the purchaser of the land at a sale made under a judgment which he knew was for an amount nearly ten times more than it ought to have been, and his omission is coupled with an act which transfers the estate to himself at one-tenth of its value, then these facts alone, without a consideration of the other attending suspicious circumstances, might be deemed sufficient to forbid a court from allowing him or his heirs to hold a title thus acquired

against the heirs of the intestate, who were all minors at the time of the transaction. (Conger vs. Ring, 11 Barb. 361; Harper vs. Mansfield, 58 Mo. 17.)

Again, it appears that the land bought by the administrator sold for $540, and the lot in Warsaw sold for $140, aggregating the sum of $680. Now, but for the wrongful act of the administrator in permitting a judgment for $3,421, when it should have been only for about $400, a sale of all the real estate would not have been necessary, and what was not sold would have descended to the plaintiffs, the heirs of Clark; and if all of it had been sold, as was done, the excess of $280 over the judgment would, after the payment of costs, have been assets in the hands of the administrator for distribution among the heirs, there being no debts.

Considering these facts in connection with the fact that Drake, the administrator, was the brother of the mortgagee, and that the parties interested in the estate were all minors, and that the assignee, Stewart, was the brother-in-law of the mortgagee, we think a case is presented which justifies the interposition of a court of equity, and entitled the plaintiffs to the relief prayed for.

We do not place our conclusion upon the ground that an administrator cannot purchase land mortgaged by his intestate, at a sale made by a sheriff under a judgment of foreclosure without becoming a trustee, either for the creditors or heirs; nor is it necessary for the purposes of this case, to determine the question whether he can or cannot so purchase. If, however, an administrator omits to adopt the means provided by statute for the sale of land mortgaged by his intestate, and thus escapes the duties and prohibitions therein imposed, and colludes with the mortgagee and consents to the rendition of an unrighteous and unjust judgment against him, and buys the property under that judgment for one-tenth of its value, he will not be permitted to reap the profits of his fraud, as against those who have suffered by it, and whose interests to some extent were confided to him.

There was no objection made in the court below to the insufficiency of the tender made by plaintiff, but the objection is urged before us.

In the case of Whelan vs. Reily (61 Mo. 565), the rule " that he who seeks equity must do equity," was stated to import "that when a complainant comes before a court of conscience, invoking its aid, such aid will not be granted, except upon equitable terms." From this it follows that, if a party tenders all that he admits to be due, thereby evincing a willingness to do equity, the court will not deny him relief if he has mistaken the equity, but on the trial of the case will afford the relief only upon his doing what, in its judgment, the equity of the case requires. (Irwin vs. Brittain, 1 Hoff. Ch. 353 ; Bishop of Winchester vs. Paine, 11 Vesey, 194.)

Judgment reversed and the cause remanded. All the other judges concur, except Judge Wagner, who is absent.