# THE STATE ex rel. PRIDDY et al. v. GIBSON, Judge.

**In Banc, November 25, 1904.**

1. **BILL OF EXCEPTIONS: Sufficiency: Equity Case: Refusal to Approve: Mandamus.** Where the only question which it is desired to have the appellate court pass upon is whether the court had jurisdiction to try the case, it is necessary that the bill of exceptions embrace only all the evidence and proceedings bearing upon that question. And in this case, which was one in ejectment, wherein the defendants set up in their cross-bills equitable defenses, and the decree was for them, the plaintiff admitting that on the evidence on the merits the decree is unassailable, but seeking to have reviewed the court's action in overruling plaintiff's application for a change of venue and for a continuance, it is held that a bill of exceptions which embraced all the evidence and proceedings on those subjects was sufficient, and could not be denied because it did not contain the evidence on the merits. And the trial judge having refused to approve it, the writ of mandamus issues to compel him to do so.

2. ———: ———: **Jurisdiction: Evidence on the Merits.** Where the court had no jurisdiction to try the case, an appeal or writ of error by which it is sought to show that fact alone, can not be denied on the ground that the respondent has a right to insist that the decree rendered in his favor shall not be disturbed until the appellate court has reviewed the entire evidence and found the merits of the case against him.

3. ———: ———: ———: **Change of Venue.** A mandamus to compel the trial judge to sign a bill of exceptions on behalf of an appellant who has appealed from the court's ruling denying his application for a change of venue, can not be denied on the theory that the matter set up in the application was without merit. Whether or not it contained merit is the question for determination on appeal.

4. ———: ———: ———: **Remedy: Mandamus: Statute.** Where the only question at issue is one of law, namely, whether the bill of exceptions in an equity case, in which it was sought by the appeal to show that the trial court had no jurisdiction to try the case, should contain all the evidence or only the evidence on the point of jurisdiction, the only remedy the appel-

State ex rel. v. Gibson.

lant has to get the bill considered by the appellate court is · mandamus to compel the trial judge to approve the bill. The statute prescribing the mode of verifying the bill in case the judge will not approve it, applies only when there is doubt as to the bill's accurately stating the evidence.

## Mandamus.

PEREMPTORY WRIT AWARDED.

*W. C. Forsee, H. H. McCluer* and *S. P. Forsee* for relators.

(1) It was not only the duty of respondent to sign the bill of exceptions tendered him, if the same was found to be correct, but it was equally his duty, if he thought the same was in any way imperfect, to correct it and then sign it. Page v. Clopton, 30 Gratt. 415; City v. Ballard, 126 Cal. 677; Swartz v. Nash, 45 Kan. 341. Respondent could not refuse to sign the bill, and refuse also to permit it to be corrected after he had indicated wherein it was incorrect. Relators had the right, after respondent indicated wherein he thought the same imperfect, to correct all that was necessary to be corrected, and then have same signed, and they were entitled to a reasonable time after the court pointed out wherein it was not true, to make it true. (2) The petition had two counts, one in ejectment, the other to determine title under section 650, Revised Statutes 1899. It is not a suit in equity. A statutory action is not a suit in equity. Daut v. Keen, 124 Mo. 105; St. Louis v. Wetzel, 110 Mo. 264; Smith v. Finn, 77 Mo. 499; Ruby v. Coal & Mining Co., 21 Mo. App. 159; Seidel v. Cornwell, 65 S. W. 971. The answer in this case was not sufficient to convert the cause into an equitable proceeding. Section 650, under which the suit was brought, is exclusive and afforded full relief to all of the parties, both plaintiffs and defendants. Merriwether v. Love, 167 Mo. 514. (3) If this was a suit in equity, it would not have been necessary to

have preserved the evidence by bill of exceptions, for this reason: the plaintiffs were seeking to bring the case to this court for the purpose only of determining the question as to whether or not the judge had the authority and right to try the case at all. That is a legal question. If, on the appeal, it was found that respondent had the authority to try the case, the judgment would have to be affirmed, as no exceptions were being saved to any of the proceedings during the trial; and if it was found, on such appeal, that respondent was without authority to try the case, it would have to be reversed. In either case, it was entirely immaterial what the evidence or any of the proceedings at the trial may have been, because the appeal was only intended to determine the right of respondent to have proceeded at all with the trial of the case. (4) The bill of exceptions in this case could not have been signed by bystanders. It is only where the judge denies the truth of the bill and certifies thereon in what particular he deems it untrue, that the signing by bystanders is permissible, and not then if the term has expired or the court fails to return the bills so that the signature of bystanders can be obtained. R. S. 1899, sec. 733; State ex rel. v. Field, 37 Mo. App. 95; State ex rel. v. Jarrott, 183 Mo. 204; Garth v. Caldwell, 72 Mo. 630. (5) The fact that the time given by the court to file the bill of exceptions had expired before this action was begun is not sufficient to prevent the issuance of this writ. State ex rel. v. Phillips, 96 Mo. 570; 107 Mo. 542; 130 Mo. 312; Merrill on Mandamus, secs. 192, 50, 80; Ethridge v. Hall, 7 Porter 47; People v. Hawes, 25 Ill. App. 326; 30 Ill. App. 94. (6) It is as much the duty of the court to examine and settle the bill of exceptions when tendered as it is to sign the same when admittedly correct. Collins v. Christian, 92 Va. 731; Page v. Clofton, Judge, 30 Gratt. 420; State v. Hawes, 43 Ohio St. 16; State v. Millett, 37 Mo. App. 83; Moose v. Kimball, 153 Mo. 579.

*C. O. Tichenor, O. H. Dean* and *Lathrop, Morrow, Fox & Moore* for respondent.

(1) The issues made by the cross-petitions and the answers thereto were of an equitable nature, and the bills of exceptions, therefore, should have contained all of the evidence. As the proposed bills of exceptions were mere skeleton bills, containing none of the evidence on the merits, it is submitted that it was a proper exercise of discretion on the part of the respondent to decline to sign them. Rule 7 of the Supreme Court; Rule 12 of the Supreme Court rules adopted at April term, 1877; State ex rel. v. Jarrott, 183 Mo. 204. (2) The defendants in the court below have a right to insist that the decrees rendered in their favor shall not be disturbed until this court has reviewed the entire evidence and found the merits of the cases against them. State ex rel. v. Jarrott, 183 Mo. 204; Flora v. Anderson, 75 Fed. 233. (3) There is no merit in relators' claim of error in the matter of the application for change of venue; for this reason alone the writ of mandamus should be denied. State ex rel. v. Matlock, 82 Mo. 476; Railroad v. Holladay, 131 Mo. 452; Wolf v. Ward, 104 Mo. 107; 19 Am. and Eng. Ency. of Law (2 Ed.), 751, 848; State ex rel. v. Railroad, 77 Mo. 147. · (4) By sections 727-736, Revised Statutes 1899, the relators had a specific statutory remedy which excludes their right to the writ of mandamus. State ex rel. v. Wickham, 65 Mo. 634; State ex rel. v. Thayer, 15 Mo. App. 391; 19 Am. and Eng. Ency. of Law (2 Ed.), 748; State ex rel. v. County Court, 109 Mo. 248; State ex rel. v. Seibert, 130 Mo. 202; Tyler v. Township Board, 75 Mo. App. 561.

BRACE, J.—This is an original proceeding in mandamus to require the respondent, one of the judges of the Jackson County Circuit Court, presiding in division one of said court, to sign a bill of exceptions in

the case of the relators against James Mackenzie, tried in said division of said court, and brought here by writ of error.

The questions to be decided arise upon a motion for a peremptory writ on the ground that the return is insufficient. The material facts upon which the discussion turns may be briefly stated as follows:

On the 26th of June, 1903, there was pending in the said division of said court nine separate and distinct actions against several defendants, of which the case against the said Mackenzie was one, some of which theretofore had been transferred over the protest of the plaintiffs therein from the other divisions of said court under the rules thereof to said division, and in all of which the issues were substantially the same.

The petitions contained two counts, one in ejectment in ordinary form, and the other an action under section 650, Revised Statutes 1899, to determine and define the title, estate and interest in certain lands in Jackson county between the several parties, and the answers contained cross-bills, the allegations and prayer of which were in substance, as follows:

"That the property involved in the action was a part of the fifty-two acre tract of land in Jackson county, Missouri, which was owned by Thomas Jones at the time of his death in Jackson county, Missouri, in 1843; and that at the time of the death of said Thomas Jones, he left nine children, two of whom were Nancy Ann Jones, afterwards married to James Priddy, and Elizabeth Jones, afterwards married to W. P. Linville; that the said Thomas Jones died intestate, and the said Nancy Jones and Elizabeth Jones each inherited a one-ninth interest in said fifty-two-acre tract, including the property in controversy in each case; that the said Nancy Ann Jones intermarried with James J. Priddy in the year 1849, and that Elizabeth Jones afterwards intermarried with one William P.

Linville; that on the 5th day of May, 1853, the said
Nancy Ann Priddy was over the age of twenty-one
years, and she, on that day, together with her husband,
James J. Priddy, made, executed and delivered a deed
of the property in question to one Lott Coffman, there-
by conveying the one-ninth interest in said property
vested in the said Nancy Ann Priddy; that the said
Elizabeth Jones, being then unmarried and of lawful
age, did join in such conveyance, and did thereby con-
vey to the said Lott Coffman all her one-ninth interest
in and to the said property; that the said Elizabeth
Jones reached the age of twenty-one a long time before
her marriage to the said W. P. Linville, and during the
said period in which she was single and unmarried, and
over the age of twenty-one years, she did not at any
time undertake to disaffirm or repudiate, or in any way
question the conveyance which she had made to Lott
Coffman, although more than a reasonable time for
that purpose had elapsed; that by virtue of the prem-
ises a good and sufficient title was conveyed to the said
Lott Coffman of all the interest and estate of the said
Nancy Priddy and her husband, James J. Priddy, and
Elizabeth Jones, and that the defendants in each of
said actions acquired, through mesne conveyances, all
the right, title and interest so received by the said Lott
Coffman; and that he and those under whom he claimed
acquired the interest of the other heirs of Thomas
Jones long prior to 1869, and have since been the own-
ers of the entire estate in and to the property men-
tioned in the petition in each of said causes.

"That at the time of the said conveyance in 1853,
the value of the said fifty-two acres of land did not
exceed the sum of two hundred dollars, and that since
that time the said real estate has increased in value
to more than five hundred and five thousand dollars,
and that improvements have been placed thereon ex-
ceeding in value the sum of six hundred and thirty-
three thousand dollars; that the property owned by

each defendant in said actions has greatly increased
in value, and that each defendant has made valuable
and lasting improvements thereon; that since the mak-
ing of said deed in 1853, the said James J. Priddy and
Nancy Ann Priddy his wife, and Elizabeth Linville,
during their lifetime, and the said William P. Linville
and the relators have for many years known that said
property was increasing in value with great rapidity;
that it was being improved by persons claiming to be
the owners by deeds from the lawful owners thereof,
including the said deed made in 1853 by James J.
Priddy and Nancy Ann Priddy, his wife, and Elizabeth
Jones; that they further knew that said property had
ceased to be farm property, and had been taken into
the city limits of Kansas City, Missouri, and had been
platted and subdivided and sold to various owners, and
extensive and valuable improvements placed thereon,
and, with such knowledge, neither the said persons, nor
their descendants or heirs, including the plaintiffs in
said suits, made or asserted any claim to or in respect
of said property until the filing of said suits; that the
said plaintiffs in said actions and their predecessors in
interest had been guilty of gross laches, and were
estopped to assert any claim to said property. That it
was further alleged in said cross-bills that the plaintiffs
in said actions claimed and asserted a right or title to
a two-ninths interest in said property owned by the
defendants respectively, and based their claim upon the
allegations that the said Nancy Ann Priddy and Eliza-
beth Jones were minors at the time of the execution of
said deed in 1853, and that the same was, by reason
thereof, voidable, and that they or their heirs had dis-
affirmed said deed and reinvested the title in them, and
that such claims are without foundation in fact and
constitute a cloud upon the title of the defendants re-
spectively; that James J. Priddy and Nancy Priddy,
his wife, during their lifetime, executed a power of at-
torney to one S. P. Forsee, authorizing him to sell cer-

tain property, including the property in controversy, and.to sue and recover the same, and for other purposes; that said power of attorney was recorded and is now of record in the office of the recorder of deeds for Jackson county, Missouri; that the defendants were informed and believed that a similar power of attorney was executed by William P. Linville and Elizabeth Linville his wife, and that by reason of the premises and the said powers of attorney a cloud has been cast upon the title of the said defendants respectively to their said property. It was further averred that the defendants and each of them were at the time of the institution of said suits in the lawful possession of the property described in the petitions respectively, and that the title thereto had emanated from the Government of the United States more than ten years prior thereto; that the defendants respectively and those under whom they claimed had been in possession of said property for more than thirty-one consecutive years prior to the institution of said actions; that such possession had been exclusive, and that no other person or persons during said period had been in possession of said property or had paid any taxes thereon, but that all of the taxes and assessments during said period of more than thirty-one years had been paid by the defendants respectively, and those under whom they claimed; that such possession had been open, notorious, exclusive and adverse, and under claim of ownership and color of title, and without notice or knowledge of plaintiffs' claim until the institution of said actions; that the defendants in said cross-bills prayed for the order and decree of the court, adjudging that the title to the property in controversy was in the defendants respectively, free and clear of any claim on the part of the plaintiffs, and that the said deed made by James J. Priddy, Nancy Ann Priddy and Elizabeth Jones in 1853, should be decreed to be the irrevocable deed of the said grantors,

and that the plaintiffs in said suits be decreed to have no right, title or interest in or to the said property of the said defendants respectively, and for such other and further relief as might be equitable and just.''

Upon the allegations in the cross-bills in each case issue was joined by reply. Prior to the transfer of the cases from the other divisions, an application for a change of venue in one of them had been made, and upon the transfer being made, plaintiffs dismissed their petitions in each of the cases; that application was over-ruled, and at the date aforesaid the nine cases were pending in division one of said court, on the cross-bills of the defendants and the replies thereto. Thereupon the plaintiffs filed therein applications in each of said cases for a change of venue, alleging in the affidavits as cause therefor:

"That affiants have just cause to believe, and do believe, that none of said plaintiffs can have a fair and impartial trial in said cause before either the Honorable James Gibson, the Honorable James H. Slover, the Honorable W. B. Teasdale, the Honorable Shannon C. Douglass, or Honorable Andrew F. Evans, judges of divisions one, two, three, four and five respectively, of the circuit court of Jackson county, Missouri, because the said judges and each of them is prejudiced against said plaintiffs and each of them, and because the opposite party, defendant herein, has an undue influence over the minds of said judges.

"Third, because the inhabitants of the said county are prejudiced against each of said plaintiffs.

"Fourth, because the said defendant, the opposite party herein, has an undue influence over the inhabitants of the said county; that affiants obtained their information and knowledge of the existence of the undue influence of the said defendants over the minds of the said judges, and each of them, on the 25th day of June, 1903; that affiants obtained their information and knowledge that the opposite party, the defendants here-

in, has an undue influence over the inhabitants of the said county on the 25th day of June, 1903.

"Affiants further state that they have received on this 25th day of June, 1903, after four o'clock p. m., further and additional evidence and information of each of the cases alleged as aforesaid in this application for a change of venue in this cause, and that they believe if said cause is tried in said county, it would be impossible for any of the plaintiffs in this cause to have a fair and impartial trial in said causes before any of the judges above named, or any other judge that might be elected or agreed upon, or before any of the inhabitants of said county for the reasons aforesaid."

The applications came on for hearing on the 30th day of June, 1903, and after all the evidence pro and con thereon had been heard, the same were overruled and relators excepted. Thereupon the respondent in open court advised the relators that all of said cases would be tried at one and the same term by applying to all of the cases all of the evidence on either side common to all the cases, and applying to each case such evidence as might be peculiar to it, and that separate records would be kept in each case. To this mode of procedure the plaintiffs objected. Their objections were overruled and they excepted. Therupon they asked for a continuance, which was refused and they excepted. Thereupon the causes went to trial on the issues made by the defendants' cross-bills and the plaintiffs' replies thereto, and in the course of the trial plaintiffs introduced evidence tending to prove that between the years of 1894 and 1899 the respondent was a member of the law firm of Warner, Dean, Gibson and McLeod. That while he was a member of that firm, Mr. McLeod, one of the other members of the firm, was employed by the said James Mackenzie to examine and give an opinion as to the validity of his title to the land in question in said suit. That he did so and gave an opinion that his title was good, for which he received a fee on

account of his said firm. This evidence further tended
to prove, however, that the respondent had no personal
knowledge whatever of this transaction.    Thereupon
the plaintiffs filed their written protest briefly reciting
the facts aforesaid, and requested respondent to dis-
continue the further hearing and consideration of said
cause upon the ground that he had been of counsel in
the matter then on trial, and ought not on that account
to proceed further therewith. The request was refused,
the relators excepted, and the case proceeded to judg-
ment, resulting in a decree in favor of the defendants
on their cross-bills, in which the relief prayed therein
was granted. In due time the relators filed their mo-
tions for new trial and in arrest, in each of said cases
which were overruled, the relators excepted and time
was given them in which to file their bills of exceptions.
The motions for new trial were predicated upon the fol-
lowing grounds, among others:

"1st.    That the court erred in refusing to sustain
plaintiffs' said applications for a change of venue in
each of said cases, as prayed for; to which action of
the court plaintiffs at the time excepted.

"2d.    The court erred in trying all of said cases
together, over plaintiffs' objections; to which action of
the court the plaintiffs excepted.    ·

"3d.    The court erred in proceeding to try any or
all of said cases after plaintiffs presented their protest
against the court's proceedings in said cases, because
the judge presiding therein had been of counsel in said
cases and was interested therein.  To which action of
the court plaintiffs at the time excepted.

"4th.  Because the court erred in overruling plain-
tiffs' application for a continuance in each of said
cases.    To which action of the court plaintiffs ex-
cepted."

Afterwards, and within the time allowed for that
purpose, the relators presented their bills of exceptions
containing all the evidence and proceedings connected

with and bearing upon these four points, to the respondent, and requested him to sign them. Thereupon the controversy arose, which led to this proceeding. The respondent insisting that the bills should contain all the evidence in the cases, and that he would not sign them unless they contained the evidence upon the merits as well as upon the four points upon which relators contended they only wanted the case reviewed in the Supreme Court. The time for filing the bills was extended from time to time until the 5th of December, 1903, when the controversy culminated by the respondent filing the bills unsigned with his objections thereto in writing indorsed thereon. Thereupon relators offered to amend said bills so as to remove said objections and make the bills conform to the views of the respondent in every particular, except that they would not embrace in such amended bills the evidence introduced on the merits. This offer respondent refused, and thereafter the writ herein was sued out to require the respondent to sign said bills as so amended, and thus the question to be decided is presented.

(1)   For the respondent it is contended that the peremptory writ ought to be denied; because the issue made by the cross-bills and the answers thereto were of an equitable nature, and therefore the bills should have contained all of the evidence, and as they did not and would not, when amended as proposed, have contained the evidence on the merits, the respondent ought not to be required to sign them—and in support of this contention, his counsel cite and rely upon rule 7 of this court, which provides that "in case of equitable jurisdiction the whole of the evidence shall be embodied in the bill of exceptions," and the case of State ex rel. Guinan v. Jarrott, Judge, 183 Mo. 204. That case was decided In Banc at the last term of this court. The opinion was written by GANTT, J., unanimously concurred in, and in support of this contention is quoted

at length in the brief of counsel for respondent as follows:

"Ordinarily a party is at liberty to save just such exceptions as to him seem necessary, and unquestionably the courts approve the shortening of transcripts as far as practicable. Accordingly, when an appellant desires in a law case to test the correctness of an instruction, rule 6 of this court expressly permits him to state generally that there was evidence tending to prove the particular fact or facts, and if the parties disagree as to what fact or facts the evidence tends to prove, then the evidence of the witnesses may be stated in a narrative form, avoiding repetition and omitting all immaterial matter, and our statute permitting the prosecution of appeals and writs of error by the filing of abstracts and counter abstracts was intended to abbreviate records on appeals. But even in an action at law, if the appellant seeks a reversal on the ground that there was no evidence to support the verdict, or that a demurrer to the evidence should have been sustained, *all* the evidence must appear in the bill. [Knipper v. Bechtner, 32 Mo. 255; Routsong v. Railroad, 45 Mo. 236; State v. Clarkson, 96 Mo. 364, 9 S. W. 925.] It often occurs that the only complaint is the omission or rejection of certain evidence; in such case it would be an unnecessary burden to require the whole evidence to be brought up; therefore, it is allowable to state in a general way that evidence was admitted pro and con tending to prove or disprove a certain issue and that the appellant offered certain evidence, which over his objection and exception was excluded; or his adversary offered and the court admitted certain evidence over his objection and exception, and then set out the admitted or excluded evidence, with a statement of the tendency of the other evidence. [Carter v. Holman, 60 Mo. 502.] The reason underlying this practice is readily seen in our system of law which requires the court to defer to the finding of a jury when there is sub-

stantial evidence to support the verdict; and appellate courts are principally concerned in law cases in seeing that the jury was properly instructed, and that only competent legal evidence was submitted to them. *But in equity cases appellate courts will review the testimony and are not bound by the findings of the chancellor, either as to ultimate facts or his conclusions of law,* and, hence, it has been uniformly ruled by this court in equity cases that the whole of the evidence must be brought up on appeal and a rule of this court to that effect has long been in force. Indeed, this court has held in a number of cases that on an appeal in an equity case it would consider evidence which was improperly excluded by the trial court, or reject evidence improperly admitted, when preserved in the bill of exceptions, without reversing the judgment for that reason. [Barrett v. Davis, 104 Mo. 549, 16 S. W. 377; Hanna v. South St. Joseph Land Co., 126 Mo. 16, 28 S. W. 652; Goodrick v. Harrison, 130 Mo. 269, 32 S. W. 661; Davis v. Kline, 96 Mo. 401, 9 S. W. 724, 2 L. R. A. 78; Kleimann v. Gieselmann, 114 Mo. 437, 21 S. W. 796, 35 Am. St. Rep. 761.]

"The mandamus sought in this case is to require the judge of the circuit court to sign a bill of exceptions which contains none of the evidence, and this court, if it grants the writ, will have nothing before it but the record proper, when the case is reached. The contention of the relator is that the evidence is unnecessary, because, he says, we would have the findings of the court as to the facts and the law before us. If this is true, he does not need a bill of exceptions, and such a bill as he seeks to have signed would be entirely useless. It would avail him nothing. [Walker v. Stoddard Circuit Judge, 31 Mo. 123.] But we do not agree with him. The opposite party has obtained rights by this decree. *He has a right to have the whole evidence upon which his decree is based before this court before it is reversed. He may be able from that evidence to show*

*that the circuit court's findings were erroneous, and*
*the decree right notwithstanding such findings.* · Evidently he convinced the circuit court that the decree in
the first instance was wrong, and thereby secured a
modification of it. Without the whole evidence we can
not determine whether the court was right in the first
instance or right in modifying the decree. *If we are*
*to pass upon any matter which depends upon the findings and the testimony, clearly we ought to have the*
*whole of it before us,* and the defendants in the circuit
court and the circuit judge are right in insisting that
appellant shall bring up the whole proceedings.

"In Blount v. Spratt, 113 Mo. loc. cit. 54, 20 S. W.
967, this court, speaking of the statute providing that
the trial court, if either party require it, shall state in
writing its conclusions of facts found separately from
the conclusions of law, said: 'We do not think it was
the intention of the Legislature to abrogate the practice of this court so long followed of supervising the
findings of the trial courts in equity cases. If the evidence was before us on proper exceptions, we could review it and determine for ourselves the correctness of
the findings.' And in the following cases it is ruled we
are not bound by the findings of the circuit court: Lins
v. Lenhardt, 127 Mo. 281; Dalrymple v. Craig, 149 Mo.
351; Courtney v. Blackwell, 150 Mo. 267, 268; Hoeller
v. Haffner, 155 Mo. 597.

"There are cases in which we have held that where
there were separate findings of fact and law and no
exception was taken by either party to such finding of
facts, we would treat it as an agreed case or special
verdict, but those decisions do not conflict with the rule
above announced, that where there is a contest as to
the facts in an equity case, the court is not bound by
the finding of the circuit court.

"According to the averments of the alternative writ
the defendants assailed the court's action by timely
motions for new trial and in arrest, and the circuit

court modified its judgment on the ground that he had omitted a finding which justified the modification. Now in this state of case is it to be held that the circuit court and the defendants are irrevocably bound by the finding of facts and that the circuit court could not modify its views and correct its own errors while it still had jurisdiction of the cause? We think not; neither do we think that in such a case the defendants are to be held as consenting to the finding of facts, as in the first instance made by the court. The modification was made before plaintiff's motions were determined, and unquestionably he could then have amended his motion to include his exceptions to such ruling.

"The question here is, shall the judge be required to sign a mere skeleton bill, which will not show upon what facts he acted, or are the prevailing parties and the trial court entitled to have the proceedings reviewed from the same point of view that the circuit court occupied? Plaintiff says that notwithstanding the cross-bill he was entitled to a decree in his favor, but as the burden was on him to show the conveyance from M. S. C. Donnell was fraudulent, the evidence may show he failed in doing so; if that be true, he would not be entitled to recover whether the cross-bill stated a good defense or not.

"In our opinion the peremptory writ ought not to have been awarded; that relator ought to bring up the evidence and all the record if he desires to have the decree of the circuit court reviewed and the circuit court ought to extend the time sufficiently to permit him to do so. Writ denied. All concur."

The scope and purpose of rule 7 is therein clearly pointed out, and, in the sentences italicized, the distinction between that case and the one in hand is clearly indicated. In these cases on error or appeal the relators do not propose to have the decree reversed upon any error of the court in any matter which depends on

the evidence upon which the decree was based, or the ruling of the court thereupon. Their proposition concedes the fact that on the evidence on the merits the decree is unassailable, and upon it they raise no question. The question they raised in the trial court, and the only question they propose to have this court pass upon, is whether the respondent had jurisdiction to try the case at all. All the evidence and proceeding bearing upon that question they propose to embrace in their bills of exceptions, and when this is done, what more can be required to enable this court to pass upon that question? To require a useless thing to be done is not within the purpose or meaning of the rule, and to encumber the record with all the evidence on the merits of the case on error or appeal—when the only question to be determined thereon is whether the trial judge had jurisdiction to try the case, would be, not only a useless, but in these cases a very costly thing to the relators.

(2) It is next suggested that the writ ought to be denied because the defendants below have a right to insist that the decrees rendered in their favor shall not be disturbed until the court has reviewed the entire evidence and found the merits of the case against them. There is nothing in this suggestion, for however meritorious the decrees may be, if the court that rendered them had no jurisdiction to do so, and this court should so find, the decrees could not stand, and a review of the evidence upon which they were based would be a bootless task. [State ex rel. Scott v. Smith, 176 Mo. 90.]

(3) It is next contended that there is no merit in the relators' claim of error in the matter of the application for a change of venue, and for this reason the writ should be denied. But whether there is merit in such claim is the very question that relators seek to bring before this court for determination in the regular and ordinary course of proceeding; in order that this may

be done, it is necessary that the applications, evidence and proceedings thereon should be before us properly authenticated in a bill of exceptions, for it has been repeatedly held that applications for change of venue and the action of the court thereon are matters of exception. [State v. Ware, 69 Mo. 332; Stearns v. Railroad, 94 Mo. 317; Klotz v. Perteet, 101 Mo. 213.] And it is well-settled law, for which no authorities need be cited, that a writ of mandamus can not be made to take the place of an appeal or writ of error.

(4) It is finally contended that by sections 727-736, Revised Statutes 1899, the relators had a specific statutory remedy which excludes their right to the writ of mandamus. That statute was intended to provide a remedy in cases where the judge refused to sign a bill on the ground that it is not a true statement of the matters excepted to. But when the relators offered to make the bill conform to the views of the respondent in regard to those matters, there was no longer any question as to the verity of the bill. The only question was, whether in addition thereto the bill should contain the evidence on the merits; as to what that evidence was there was no dispute, and the only question of difference was purely one of law for the settlement of which that statute afforded no adequate remedy, and the law none, except the writ of mandamus, which is an appropriate one in such a case. [State ex rel. v. Jarrott, supra.] The peremptory writ should go and it is so ordered.

All concur except *Burgess, J.,* absent.