# THE STATE ex rel. PRIDDY et al. v. GIBSON, Judge.

### In Banc, March 16, 1905.

1. **BILL OF EXCEPTIONS: Signing After Time Expired.** After the time fixed for filing a bill of exceptions has expired the circuit court has no power of its own motion to incorporate in the record the bill of exceptions filed within the time fixed, and an extension of that time can be made only while the time of extension exists.

2. ———: ———: Request. An approval of a bill of exceptions on request of appellant after the time fixed for filing the same has expired adds no legal efficacy to the judge's compliance with the request.

State ex rel. v. Gibson.

3. ——: ——: **Power of Supreme Court.** The Supreme Court, because of either its original or its appellate jurisdiction, by virtue of its constitutional superintending control, may compel the doing of an act which a lower court has lost the power to do spontaneously. Although the time fixed for the filing of a bill of exceptions had expired before the writ of mandamus issued out of the Supreme Court on timely application, was served on the trial judge, directing him to sign a bill of exceptions, which he had wrongfully refused to sign at a time when he had the inherent power to do so, the bill may then in accordance with that direction be incorporated in the record as a part thereof.

4. ——: **Mandamus: Signing Before Service.** Where the trial judge, before the issuance of the alternative writ in mandamus directing him to settle, sign and cause to be filed a bill of exceptions, did so, but after the time within which leave to file the bill had expired, the Supreme Court will not conclude relator or the court on the point, should relator desire to present it anew, in the principal case, already pending in this court on writ of error, whether the bills actually allowed by the trial judge, but out of time, are sufficiently authenticated receptacles of error and exceptions.

5. ——: ——: **Judge's Term Expired.** A peremptory writ of mandamus to the trial judge directing him to settle, sign and cause to be filed a bill of exceptions, will have to be denied if his term has expired and he is out of office. Nor can it be directed to his successor if his successor is not a party to the proceeding.

6. **MANDAMUS: Right to Writ: Discretion: Laches.** While mandamus is no longer a mere prerogative writ, it is yet somewhat a discretionary writ and should be issued, not in the exercise of an arbitrary or capricious discretion, but of a sound legal discretion in accordance with the established rules of law. And among other things appealing to the discretion of a court are laches.

7. ——: **Laches: Particular Cases.** Painstaking discrimination must be used in applying particular case law treating of the doctrine of laches to mandamus proceedings, since what is laches or delay in one case may not be in another.

8. ——: ——: **Bill of Exceptions.** An application for mandamus to settle a bill of exceptions with a view to an appeal should be promptly made, and if that is not done it should be denied on the ground of laches unless satisfactory excuse be given for the delay.

9. ———: ———: ———: One Year. Where an application for mandamus to compel the trial judge to settle and sign a bill of exceptions is made over a year after he had refused to settle and sign it and that long after relator knew of his refusal, the peremptory writ should be withheld, unless sufficient excuse is offered. And in these cases, which were eight in a series of nine kindred cases which had been consolidated and tried together, against relators' protest and exceptions, it is held that a hope by relators that by securing the writ in the ninth case the other parties in these eight cases would stipulate to make that a test case, is not a sufficient excuse for a delay of over a year in making the application for a writ in these cases, for the facts clearly show that all the cases were hotly contested suits in which relators had no reason for a hope that a stipulation of the kind would ever be made.

## Mandamus.

PEREMPTORY WRIT DENIED.

*S. P. Forsee, W. C. Forsee, H. H. McCluer* and *M. M. Bogie* for relators.

(1) After the time had expired within which plaintiffs were given to file their bills of exceptions, respondent's act in signing the bills of exceptions was a nullity, unless he did so in pursuance of an order of this court; hence, it is no defense to this action that respondent signed the bills of exception during the month of December, 1904. "Counsel cannot confer jurisdiction." Bank v. Barker, 145 Mo. 367; State ex rel. v. Gates, 143 Mo. 63; State v. Schuchmann, 133 Mo. 111; State v. Simmons, 124 Mo. 443; State v. Britt, 117 Mo. 584; State v. Moseley, 116 Mo. 545; State v. Apperson, 115 Mo. 470; State v. Scott, 113 Mo. 559. (2) The fact that the time given by the court to file bills of exceptions had expired before this action was begun is not sufficient to prevent the issuance of this writ. State ex rel. v. Philips, 96 Mo. 570; Merrell on Mandamus, secs. 192, 50, 80; People v. Hawes, 25 Ill. App. 326; People v. Hawes, 30 Ill. App. 94. (3) The fact

that Judge Gibson's term has expired since he was served with the alternative writ is no reason why the peremptory writ should not be awarded. He was served with the alternative writ before his term had expired. The action is against the judge of the circuit court, though Judge Gibson is personally named as the respondent. Thompson v. United States, 103 U. S. 480; High on Ex. Rem., sec. 39; 14 Am. and Eng. Ency. Law (1 Ed.), 220. If the respondent, because his term has expired before the peremptory writ could have been awarded in this case, could not be compelled to sign the bills of exceptions, this court can "order that the bills of exceptions be considered a part of the record" and that they be filed by the circuit clerk. People v. Pearsons, 3 Scam. 270.

*C. O. Tichenor, O. H. Dean, Lathrop, Morrow, Fox & Moore* and *Samuel W. Sawyer* for respondent.

(1) The respondent having already performed the acts which the relators seek in this proceeding to compel him to perform, a peremptory writ should be refused. 19 Am. and Eng. Ency. Law (2 Ed.), 758; Wood, Mandamus, 3; Spelling, Injunctions and Other Extraordinary Remedies, secs. 1369, 1377, 1381, 1385, 1386, 1413; High, Extraordinary Remedies, secs. 188, 190, 206, 211; State ex rel. v. Schofield, 41 Mo. 39; State ex rel. v. Buhler, 90 Mo. 560; State ex rel. v. Field, 107 Mo. 445; State ex rel. v. Slick, 86 Ind. 501; State ex rel. v. Newman, 25 Neb. 35; Weeden v. Arnold, 5 Okla. 578; Hice v. Orr, 16 Wash. 163; Johnson v. Ward, 82 Ala. 486; People ex rel. v. Altgeld, 43 Ill. App. 460. (2) Inasmuch as the respondent no longer holds a judicial office, he cannot be compelled by mandamus to do a judicial act. High, Extraordinary Remedies, secs. 37, 38; R. S. 1899, sec. 731; Consaul v. Liddell, 7 Mo. 250; Woolfolk v. Tate, 25 Mo. 597; Fulkerson v. Houts, 55 Mo. 301; Cocker v. Cocker, 56 Mo. 180; State ex rel.

v. Perkins, 139 Mo. 106; Richardson v. Assn., 156 Mo. 407; Fehlhauer v. St. Louis, 178 Mo. 635; Cranor v. School District, 18 Mo. App. 397; Sahlein v. Gum, 43 Mo. App. 315; Glaves v. Wood, 78 Mo. App. 351; Patterson v. Yancey, 97 Mo. App. 681; Bailey v. Coe, 79 S. W. 1158; People v. Altgeld, 43 Ill. App. 460; Smith v. Baugh, 32 Ind. 163; Phelps v. Conant, 30 Vt. 277; DeHaas v. Circuit Judge, 46 Mich. 12; Leach v. Aitken, 91 Cal. 484; State ex rel. v. Allyn, 7 Wash. 285. (3) The relators' laches is of itself sufficient to preclude the issuance of a peremptory writ. Spelling, Injunctions and Other Extraordinary Remedies, sec. 1382; Merrill, Mandamus, sec. 87; State ex rel. v. Finley, 74 Mo. App. 213; People v. Seneca Common Pleas, 2 Wend. (N. Y.) 264; People v. Collis, 6 N. Y. App. Div. 467; Vason v. Gardner, 70 Ga. 517; Anderson v. Burkhart, 5 Pac. 612; In re Depeaux's Est., 118 Cal. 522; McConoughey v. Torrance, 124 Cal. 330.

*S. P. Forsee, W. C. Forsee, H. H. McCluer* and *M. M. Bogie* for relators in reply.

When it is remembered that the judge tried ten cases together, but required us to make a separate record and separate bills of exceptions in each, and that on December 6, 1903, he attached to each bill of exceptions several hundred pages of objections, and each objection to each bill had to be carefully examined; that the records in each case had to be prepared and examined after the entries were made, the court will doubtless conclude that it was no ordinary task. The record of the cases at bar shows that no steps by the relators, however simple, have been taken in any of these cases, without the combined opposition of the numerous able lawyers representing the defendants and respondent herein, all of which has consumed considerable time. The respondent herein took about six months to prepare his objections to the bills. It was

also admitted on the argument of this cause that, during a great portion of the year 1904, Judge Gibson was in the State of California trying to improve his health; that he returned some time after the last November election. Service could not have been had on him in the case at bar during that time. In the spring of 1904 the suit of G. W. Priddy et al. v. McKenzie, was filed in this court, and at this October term of this court it was determined in favor of the relators herein. The ruling in that case by this court (if Judge Gibson wanted to abide by the final determination of the questions involved), ought to have made the case at bar unnecessary. A proper consideration for the time of this court and the costs of litigation should have prompted respondent's counsel to agree to try one of these cases on the bill of exceptions in the McKenzie (or any other) case. The bills of exceptions are all carbon copies. Respondent, by his act in requesting the bills of exceptions to be sent to him, in his signing and filing them, indicated that he would abide by the decision of this court in the McKenzie case. Yet he was unwilling to permit the proper orders to be made in this court, so that what he did would have some binding force. Are not the steps heretofore taken by us in these cases sufficient to excuse us for not bringing ten separate suits against respondent in the first instance? Laches are imputed to those who acquiesce in the ruling of the court. We have never acquiesced in the ruling of the trial court in these cases. We have objected to Judge Gibson trying these cases, from the beginning. We have made two applications for writs of prohibition. As soon as possible we file the McKenzie mandamus suit, and in one way or another we have been pressing our claim in this court for bills of exceptions in these cases. Multiplicity of suits are not encouraged by the court. We were governed by a rule of public policy, viz., to avoid a multiplicity of suits in this matter, if possible. Also out of respect for the trial judge,

we did not flood him with suits and costs, and desired not to do so, if it could be avoided. Merrill on Mandamus, sec. 87.

LAMM, J.—Original mandamus, instituted here on December 29, 1904; alternative writ, with rule to show cause on January 3, 1905, issued on same day, and served on respondent December 31, 1904.

On respondent's making return, relators filed their motion for judgment on the pleadings, and thereby an issue at law is joined for determination.

Such issue demands a summary of the material allegations pro and con, in the making of which, as appears in due course, our labors are lightened because of certain issues settled in a former case in this court between the same relators on one side and the same respondent on the other.

It appears from the recitations of the alternative writ, borrowed from the showing made in relators' petition, that Priddy et al., the present relators, commenced their certain nine actions in the circuit court of Jackson county, some being assigned to division 1, and some to other divisions of that court, and all returnable to its January term, 1903. These suit were against divers and sundry separate defendants, including one Mackenzie, and each petition contained two counts, one in plain ejectment, and another having for its purpose the determination of the interests and the quieting of the title of relators in the specified land, under section 650, Revised Statutes 1899.

Such proceedings were had in all these cases as resulted in their gathering and remaining in the division of said court over which respondent presided, and this over the protest of relators and exceptions saved.

Relators then filed their duly-verified application for a change of venue in each of said cases, setting forth, *inter alia,* that respondent and the other judges of said court (naming them) were (1) prejudiced against

relators and each of them, (2) that the opposite party had an undue influence over the minds of said judges and the mind of each of them, (3) that the opposite party had undue influence over the inhabitants of said county of Jackson, and (4) that the inhabitants of said county were prejudiced against each of relators. With such filing, relators paid to the clerk of said court the statutory sum of ten dollars in each cause.

On June 30, 1903, respondent heard said applications for a change of venue, with the evidence offered, and denied all and every of them, to which ruling relators objected and saved exceptions.

Defendants in said several causes had theretofore answered in common form and thereby pleaded certain legal defenses, together with such particular estoppels *in pais* and other equitable matters as entitled them to affirmative relief, which they duly prayed and which made the causes cognizable in a court of equity before a chancellor. In this condition of things respondent advised relators in open court that he purposed trying all said causes at one and the same time, as if they had been consolidated, by applying all the evidence offered on each side to all the cases and by applying it to each in so far as it was peculiar to each case. Whereat relators objected to such ruling and saved an exception.

Relators then made applications for a continuance, alleging lack of preparedness. This grace was denied and they again saved exceptions.

Whereupon relators were forced to trial on the merits in all said cases (treated as consolidated) and they presently offered evidence tending to show that respondent, prior to his election to the bench, was a member of a distinguished law firm in Kansas City, Warner, Dean, Gibson & McLeod, which firm was then the attorneys of defendant Mackenzie, and as such attorneys did give an opinion through one of its members, McLeod, to the effect that the title to the real estate in

question was perfect and that relators had no interest therein and from which, relators say *arguendo,* it resulted that respondent, by virtue of said partnership relation, had in effect guaranteed the title good as against relators' claim and thereby brought himself within the doctrine of the maxim: *in propria causa nemo judex.* On the offer of this testimony, relators formulated, filed and read a verified ''protest'' reciting the facts last above and requesting a discontinuance of the trial on the theory that respondent had been of counsel in the matter on trial and was practically sitting in judgment on his own case. This protest was overruled and relators saved an exception.

The trial progressed to its close, the court finding all the issues for defendants, overruling motions for new trial and in arrest, to which relators saved exceptions, and granting record leave to relators to file bills of exception on the third Monday of the ensuing October term, 1903.

We have purposely, thus far, compressed the exhaustive recitations of the alternative writ (spread over nineteen pages of print) into small compass and shall continue so to do.

The remaining recitals of the writ are in effect that relators, within the time limited by leave, presented nine bills of exceptions, common in form except as to names, each alleged to be a true bill, barring all evidence on the merits—the object being to present to this court for review, (1) the ruling of respondent on the applications for a change of venue, (2) his action in compelling the joint trial of the nine cases, (3) his ruling on the applications for a continuance, and (4) his ruling on said verified protest and his refusal to discontinue the trial on the disclosures in evidence as aforesaid—and which said bills contained all said written applications and all evidence pertinent to each, together with the rulings of respondent thereon and re-

lators' exceptions thereto, as well as the motions for a new trial and in arrest, and rulings thereon.

Respondent refused to settle and allow the bills unless the evidence on the merits was incorporated therein and so notified relators. Thereat relators requested him to examine them and indorse thereon his objections and return them to relators to the end that they might, if possible, procure them to be signed by by-standers. From time to time, by orders made of record, the time for filing the bills was extended in order to enable respondent to state his objections, the last extension being until December 5, 1903—none of these extensions had been requested by relators and up to that date neither respondent nor defendants' attorneys had disclosed to relators the scope or character of any objections (excepting the omission of the evidence on the merits) they or either of them had to the bills, though often requested so to do.

On the 4th of December, 1903, relators' counsel appeared in open court and filed a motion for a further extension of time, alleging for grounds that the time was about to expire and they had not been informed of the character of objections entertained, if any, and their right to bills would be lost through no fault of theirs unless an extension was granted.

On December 5, 1903, this motion was overruled, and a series of rather anomalous incidents occurred, the real tenor of which is somewhat nebulous and elusive as gathered from the alternative writ, but stated cautiously, the pith of it all results apparently in this: Relators' counsel appeared betimes in court (9:30 a. m.), saw their bills, quoting the language of the writ, "lying on your bench in said court within arm's length of you, with the written objections you had prepared to said bills attached thereto." Respondent declined on request (1) to allow relators to examine the bills or objections before said motion for an extension of time

was passed on or to "touch the bills," (2) refused to disclose what his objections were, (3) refused to deliver relators' bills back to them, though he informed them his objections were indorsed thereon, and (4) refused to allow relators' counsel to examine in his presence the objections indorsed thereon, but ordered the clerk to file the objections "with the bills of exceptions attached thereto and when so filed to take the same and seal them with sealing-wax, and keep them under lock and key" till further order. Whereupon respondent refused relators permission to withdraw the bills to be used as exhibits in an application to this court for a writ of mandamus, but, after the bills had been filed in open court, relators were permitted to examine the objections attached thereto, and they found eleven objections which they offered to remove *instanter* by amendment, and found other objections based on the absence of the testimony on the merits which they refused to remove by inserting the evidence, since, as contended by relators, said testimony covered "20,000 pages and had no bearing on the rulings of the court which relators were excepting to." All respondent's objections were grouped under the following title: "Reasons why James Gibson, judge of the above entitled court, refuses to sign bill of exceptions in above entitled cause," and said objecting reasons are alleged, in briefs of counsel, to cover "several hundred pages." One of the reasons assigned *ore tenus* by respondent for refusing permission to relators to cure the eleven admitted imperfections, was that he claimed no right to take any further steps in the matter. Thereupon relators renewed their request for an extension of time, which request was again refused.

We have been thus particular in stating the pertinent events of December 5, 1903, because whatever the merits of the controversy may have been, up to and inclusive of that date, between respondent as judge of the Jackson County Circuit Court, and relators, a

statement of the facts makes it entirely plain that the waters of the pool of justice had become somewhat troubled from causes appearing as well in the lines as between the lines of the record, and not only from that, but from other prima facie reasons, relators were advised by unequivocal danger signals of a fixed predetermination in the trial judge to take no other steps in the premises either *ex mero motu,* or on their prayer.

The mandate of the alternative writ commanded respondent to permit relators to embody in eight of the bills (excluding the Mackenzie case), certain indicated matter covered by said eleven objections and to allow, sign and cause to be filed the eight bills, without the testimony on the merits, or show cause on January 3, 1905, why he had not so done.

A part of respondent's return pleads matter heretofore before this court and which will be briefly referred to in order that the story of this case may be intelligible. It appears that relators singled out the Mackenzie case to proceed with, and on the 24th of March, 1904, sued out of this court an alternative writ of mandamus directed to respondent and having for its purpose the settling of the bill of exceptions in the Mackenzie case alone. Return was filed in April of that year and issue joined by a motion for judgment on the pleadings and the cause was heard in this court at this term and a peremptory writ awarded on November 25, 1904. In that cause the controlling question was whether, in an equity case, a trial judge could be coerced by the moving writ of mandamus to settle and sign a bill of exceptions which did not include the evidence on the merits. This court there held that where the matter sought to be presented on review went solely to the *jurisdiction of the court below to try the case at all,* the bill of exceptions should be settled and allowed, excluding the evidence on the merits. [State ex rel. Priddy et al. v. Gibson, 184 Mo. 490.] By that case this court construed its own rule number 7, and held that

the reasons underlying the rule did not require the embodying of all the evidence on the merits in a bill of exceptions where the merits were not involved in the appeal and where the point involved was solely a jurisdictional one. We remain satisfied with the reasoning of, and conclusion reached in, that case, and therefore so much of respondent's return in this case as merely brings before us for reagitation and resettlement the questions concluded by the former case will not be noticed.

This view eliminates thirty-seven pages of printed matter in respondent's return, the remainder of which set forth that (1) respondent's official term expired on January 1, 1905, and that he is no longer judge of the circuit court of Jackson county, and (2) concluded as follows:

"For a further return to the alternative writ the respondent states, that prior to the institution of this action and on or about, to-wit, the 20th day of December, 1904, the relators, through their counsel, requested the respondent as judge of division one of the circuit court of Jackson county, Missouri, to sign the bills of exceptions mentioned in the alternative writ as follows: G. W. Priddy et al. v. J. W. Merrill, No. 9865; G. W. Priddy et al. v. H. J. Rosencrans, No. 9864; G. W. Priddy et al. v. Minerva Hays, No. 9863; G. W. Priddy et al. v. W. M. McDearmon, No. 9857; G. W. Priddy et al. v. W. W. Kendall, No. 9858; G. W. Priddy et al.v. T. B. Tomb, No. 9867; G. W. Priddy et al. v. D. T. Beals, No. 9861; G. W. Priddy et al. v. J. A. Bayles, No. 9872.

"That thereupon and pursuant to the request of relators through their counsel this respondent did, as such judge, duly sign and seal each and every one of said bills of exceptions and caused the same to be filed with the clerk of the circuit court of Jackson county, Missouri, and made a part of the record in said causes respectively. Wherefore respondent prays that he may be dismissed with his costs."

The legal effect of relators' motion for judgment on the pleadings was to reformulate the charges in the alternative writ, heretofore sufficiently set forth, and to challenge the sufficiency of the return, hence the precise terms of the motion are immaterial.

Certain other undisputed matters will be referred to further on in this opinion and it may be said the lines of controversy are drawn, and that controversy pitched, about three principal asking propositions, viz:

(1) Respondent having, before the issuance of the alternative writ and at the request of relators, settled, signed and caused to be filed all the bills of exceptions, but at a time subsequent to the record leave, will a peremptory writ issue to make him do over again what he has already done?

(2) Respondent's official term having expired between the time of the service of the alternative writ and his return thereto, should he be coerced by a peremptory writ into doing a judicial act when *functus officio?*

(3) Are relators guilty of such laches as, in the exercise of a sound legal discretion on our part, should defeat a peremptory writ?

Of these *seriatim.*

I. It is clear, we think, that respondent lost the power to incorporate the bills in the record, of his own motion, after the day fixed by leave, and that an extension of such power could only be bottomed on an extension of time made while the right of extension existed. It is furthermore clear that the mere request of relators, made over a year after the leave expired, could not have the effect to blow into life this dead coal of power, nor could it add aught of legal efficacy to respondent's compliance with that request, hence these bills must stand in the eye of the law precisely the same as if allowed and signed without such request. Even an order extending the time, made after leave expired,

would have been *coram non judice, a fortiori* an extension without such order is bad. [Bank v. Barker, 145 Mo. 366-7, and cases cited.]

Notwithstanding this is so, it does not follow that because respondent had lost the power to settle the bills of his own motion, or by consent, relators were remediless on timely application here. No such reproach can be imputed to the law as that an injured suitor loses his right to an effectual appeal or writ of error, by the inadvertent or capricious refusal of a trial court to do its duty and create a receptacle for errors and exceptions at a time when the inherent power existed; because this court, either of its original or its appellate jurisdiction, by virtue of its constitutional superintending control, may *ex debito justiciae,* compel the doing of an act which a lower court has lost the power to do spontaneously. In State ex rel. v. Lewis, 71 Mo. 170, the time had expired for the court of appeals (under the former practice of appeal therefrom) to approve a bond in appeal and grant a supersedeas, it having refused a bond at the proper term under the mistaken notion that it had lost jurisdiction by a prior order granting an appeal to this court, and SHERWOOD, J., speaking for the court, said: "We are of the opinion, also, that it is a matter of no importance that the term has now passed during which the judgment of the court of appeals was rendered. An incident of this sort by no means divests the power of this court to afford that measure of relief which is applied for in the present instance." State ex rel. v. Philips, 96 Mo. 570, was a case where the court of appeals had lost the power to certify a case here because of a lapse of the term at which it was decided, and BRACE, J., speaking for the court, said: "If it did not become its duty to certify the cause during the term, it could not become so afterward and after the term the court could not of its own motion certify and transfer the cause; but if it did during the term become its duty to do so,

and they failed to discharge that duty, it is no answer to the writ of *mandamus* commanding them to perform that duty, to say that it was our duty under the Constitution to perform the act, during the term; we failed to perform that duty and now we have no power to act. The Supreme Court has power to command the performance of a neglected duty, and although your neglect has rendered you powerless to do it upon your own motion, its command carries with it the power to do the act required. The Constitution has placed no such restriction of time upon the exercise of its power to command the performance of neglected duty, and when that duty is performed, under its mandate, it is by virtue of and in obedience to the power of that mandate and not *sua sponte,* by virtue of the power given by the Constitution which created the duty which has been neglected. The provisions of the Constitution enacted for the purpose of securing a prompt performance of a duty by prescribing a period of time within which it must be done, can not be defeated by delay to perform that duty until the allotted time has expired. It does not follow, because the court is forbidden on its own motion to transfer a cause after the term in which the decision was therein rendered, that they may not be compelled to do so by *mandamus* if it was their duty to transfer it during the term, and they failed to do so."

These cases have been cited and approved in later cases (State ex rel. v. Smith, 107 Mo. 534; State ex rel. v. Public Schools, 134 Mo. 311; State ex rel. v. Smith, 172 Mo. 627-630), and must be regarded as settling the principles of law applicable to the question in hand.

Treating, then, the request of relators to respondent to settle and sign the bills as of no vitality, treating the signing and filing of the bills by respondent on or about December 20, 1904, as a nullity, and regarding the bills the same as blank paper, we hold that relators are entitled to a peremptory writ unless their right to

one is interfered with by some other recognized principles of law applicable to the facts of the case.

In this view we are not unmindful of such cases as State ex rel. v. Schofield, 41 Mo. 38; State ex rel. v. Draper, 50 Mo. 24, where the acts already performed were effectual in dispensing with the purpose of the writ of mandamus, nor of such cases as Harris v. Georgia, 2 Ga. 290; Cox v. Hillyer, 65 Ga. 57; Harbaugh v. Judge of Wayne Circuit, 32 Mich. 259; State ex rel. v. Newman, 25 Neb. 35; Hice v. Orr, 16 Wash. 163; Weeden v. Arnold, 5 Okla. 578; State ex rel. v. Small, 47 Wis. 436; Thornton v. Hoge, 84 Cal. 231, and other cases of that class where, by the return to the alternative writ, it was shown that the act sought to be performed under compulsion had already been performed, all of which cases are distinguished from the one at bar by the characteristic fact that the absolving act was done at a time and in the manner respondent had the legal right to do and perform.

Inasmuch, however, as the tendency of the judicial mind is away from planting thorns in the path of review (Patterson v. Yancey, 97 Mo. App. 690), in order that justice may be dealt out with certainty and in full measure, and inasmuch as the original eight causes involved in this proceeding are now pending in this court on writs of error, it is thought a debt due to the administration of the law requires us not to conclude counsel or this court on this point by this opinion, should relators desire to present anew in the principal cases the question whether the bills actually allowed and signed by respondent, but out of time, are sufficiently authenticated receptacles of error and exceptions under the peculiar facts here existing.

II. In our opinion the peremptory writ will have to be denied on the ground that respondent's official term has expired. The case is an extreme one and guard must be kept against the danger suggested by the

apt saying that "extreme cases are the quicksands of the law." The question presented is an embarassing one, but no other rational answer can be given to it, if regard be had to existing statutory provisions and certain pertinent, underlying, well-established general principles. In the first place, it has been well said that a peremptory writ of mandamus will not issue in cases of doubtful right. [State ex rel. v. Buhler, 90 Mo. 560; 19 Am. and Eng. Ency. Law (2 Ed.), 727.] In the second place, the statute provides a plain and adequate remedy for relators which they are entitled to, without doing violence to the orderly administration of the law, unless they are barred by laches from all remedy.

At first, bills of exception were settled and signed presently during the trial term, and such course was necessary, because, in the absence of short hand notes, the verity of the bills depended on the fallible and fading memory of court and counsel. By the same token the law and practice required the trial judge in his own proper person to settle and sign bills of exceptions. But in the evolution of the practice and of the written law a certain flexibility, providing for hardships, for new needs and for the suitable use of new means for obtaining accuracy in preserving the incidents of a lawsuit, to-wit, the official stenographer's notes, was created. Cases illustrating these phases of development and construing and applying our remedial statutes have been industriously collected by counsel in their briefs, but need not be referred to here. Finally, the legislative torch burned up all the learning of those cases requiring the trial judge and no other to settle and sign bills of exception, and there was enacted in 1889 the following statute, now section 731, Revised Statutes 1899: "In any case where the judge who heard the cause shall go out of office before signing the bill of exceptions, such bill, if agreed to be true by the parties to the action, or their attorneys, *or shown to the judge to be correct,*

shall be signed by the succeeding or acting judge of the court where the case was heard."

This statute is highly remedial and accordingly has been most liberally construed to further its manifest life and purpose (State ex rel. Cosgrove v. Perkins, 139 Mo. 106; Richardson v. Agr. & Mec. Ass'n, 156 Mo. 407; Fehlhauer v. St. Louis, 178 Mo. 653), and we think should control this case. By so holding we avoid issuing a peremptory writ requiring an ex-judge to meddle with the records, and we are well within the weight of authority elsewhere. [DeHaas v. Newaygo, 46 Mich. 12; Phelps v. Conant, 30 Vt. 277; Leach v. Aitken, 91 Cal. 484; State ex rel. v. Allyn, 7 Wash. 285; and see authorities collated by Goode, J. in Patterson v. Yancey, 97 Mo. App. 688, et seq.] There is a line of cases holding otherwise, of which State ex rel. v. Barnes, 16 Neb. 37, is a sample, but it does not appear that such a statute as section 731, supra, existed there, or in the states whose appellate courts are cited by the Nebraska court.

In this connection a subsidiary question is discussed by counsel whereby it is affirmed on one side and denied on the other that the writ in this case may go, as of course, against the successor of respondent, Judge Park. We deem the palpable fact that Judge Park is not a party to this proceeding and has had no day in court, a complete answer to such contention. There are before us no complaints against Judge Park and no demands are made on him by the pleadings in this cause and we shall not pass upon any question pertaining to him, until, if ever, he has been served with a writ and rule to show cause and makes his return. The question is a mere moot or abstract one on this record and will not be decided either *by way of parenthesis,* or by way of anticipation.

III. Are the relators guilty of such laches as defeat the writ?

In the growth of the law of mandamus, it must be

conceded that the writ has become to be looked on more and more as a writ of right as contradistinguished from one of mere prerogative.   When the King of England in his own royal person issued the writ from the King's Bench (People ex rel. Gas Light Co. v. Common Council, 78 N. Y. 61) it was a high prerogative writ and necessarily and entirely one of discretion.   Chief Justice MARSHALL, in the great case of Marbury v. Madison, 2 Cranch 49, borrowed and used approvingly Lord MANSFIELD's *dictum* in King v. Barker, 3 Burr. 1266, thus: "This writ ought to be used on all occasions where the law has established no specific remedy, and where in justice and good government there ought to be one." But in the case of State ex rel. v. Cook, 41 Mo. 593, Judge WAGNER for this court overlooked, or refused to follow, the *dictum* of Lord MANSFIELD, and held on authority that the writ could not cover a *casus omissus*.

In State ex rel. v. Fraker, 166 Mo. 140, the doctrine of the text of High on Extr. Leg. Rem. (3 Ed.), sec. 430, is adopted, treating mandamus as an ordinary writ of right, which issues as of course on proper showing made.   The correct rule, deduced from the modern practice, seems to be that mandamus, while no longer a mere prerogative writ, is yet somewhat of a discretionary writ and should be issued, not in the exercise of an arbitrary or capricious discretion, but in the exercise of a sound legal discretion in accordance with the established rules of law.   [19 Am. & Eng. Ency. Law (2 Ed.), 751.]   And among the things appealing to the discretion of the court are laches, and herein of mere delay not necessarily sufficient to involve the bar of statutes of limitation.

We are cited to many cases applying the doctrine of laches to mandamus proceedings, but painstaking discrimination must be used in applying particular case law, since what is a lache or neglect in one case may not be in another.   For example, in State ex rel. v. Finley, 74 Mo. App. 213, Hughlett was elected city mar-

shal of Wellsville on July 30, 1895, and was refused his certificate of election. Instead of making prompt application for a writ, he stood by until his successor was elected in August, 1895, and thereafter in August, 1896, he sued out a writ of mandamus. The peremptory writ issued, *nisi,* in January, 1897, and at that time his successor had filled nearly his entire term. The granting of the writ would restore Hughlett to only a modicum of his term and could only serve as an encouragement to future petty litigation over fees. Under such circumstances, on appeal the judgment was reversed. To the same effect is People ex rel. v. Collis, 6 N. Y. App. Div. 467. There four months was held too long, WILLIAMS, J. reasoning thus: "It is manifestly unfair, where there is a disagreement as to the propriety of the discharge, that relator should lie still and allow another person to occupy the position from which he has been removed, and draw the pay for his services therein, and after more than four months have elapsed he should be allowed to have this remedy by mandamus to be reinstated in the office, and recover compensation for services therein which he has not performed, and for which he has for a long time without objection permitted another person to perform and be paid for." In another case, People ex rel. v. Justices, 78 Hun 334, eight months was held laches in a mandamus to reinstate a discharged official. These cases are *sui generis* and not applicable to the one at bar.

In People ex rel. v. Seneca Common Pleas, 2 Wend. 264, one year was held too long to wait to set aside certain proceedings. In Vason v. Gardner, 70 Ga. 517, four months' delay in applying for a writ on a judge, *nisi,* to settle a bill of exceptions was held fatal to the remedy. In Estate of Depeaux v. Peck, 118 Cal. 522, six months were held too long to wait for an application to the Supreme Court to settle a bill of exceptions. The case is instructive and it will not be time or space misspent to quote from it. "Such application," say that

court, "should have been made promptly and within a reasonable time after she had been informed that Judge Logan refused to act. The policy of our law favors a speedy settlement of the estates of deceased persons, and it is in contravention of this policy for the appellant to allow more than six months to elapse without taking any steps looking toward the determination of her appeal." In another case a lying by for five months in a settlement of a bill of exceptions was held laches (McConoughey v. Torrence, 124 Cal. 330).

The New York, Ohio and Connecticut courts take a somewhat broader view and lay down certain general principles controlling the question of laches in mandamus. In People ex rel. v. Common Council, 78 N. Y. 56, Chief Justice CHURCH said: "When the relator has for an unreasonable time slept upon his rights, the court may, in the exercise of a sound discretion, refuse the writ. In determining what will constitute such unreasonable delay, regard should be had to circumstances which justify the delay, *to the nature of the case,* and the relief demanded, and to the question whether the rights of the defendant or of other persons have been prejudiced by such delay." In that case a delay of twenty months was held no laches, but the grounds of the mandamus had reference to certain proceedings before a city council and relator seems not to have been aware of the action complained of at the time.

Chinn v. Trustees, 32 Ohio St. 236, was mandamus to compel the delivery of a township bounty bond for $100 to a volunteer veteran of the Civil War, and a delay of six years, nothing more appearing, was held not fatal.

In Ansonia v. Studley, 67 Conn. 170, the lower court considered one year inequitable and as laches in an application for a mandamus to compel a trial judge to prepare a finding in a case with a view to appeal. The Supreme Court refused to interfere with

such exercise of discretion on appeal from a judgment denying the writ.

In Walker v. Stoddard, 31 Mo. 123, the neglect which defeated the writ was a failure to prepare the bill of exceptions in proper form, and no question of time was involved. In State ex rel. v. Redd, 68 Mo. l. c. 109, relief by mandamus was denied to relator who got his bill of exceptions signed but neglected to file it in term, though signed by the neglect of the trial judge out of time. In State ex rel. v. Smith, 172 Mo. 618, it was held that an application for mandamus to compel the court of appeals to reinstate a cause, was timely when made to the court at its next term after the mandate from the court of appeals went down, when the rights of no third parties had intervened.

From the cases we draw the general doctrine that each case must stand on its own pertinent facts and, further, that where mandamus is applied for to settle a bill of exceptions with a view to an appeal, the application should be promptly made unless satisfactory excuse be given for the delay. This view accords with the general policy of our law to hasten appellate determination of causes; *e. g.,* an appeal must be docketed here at the next term to which it is returnable. [R. S. 1899, sec. 812.] Writs of error can not be sued out after one year from date of judgment. [R. S. 1899, sec. 837.]

"Right and justice," says our Bill of Rights, sec. 10, "should be administered without sale, denial or *delay*," and, if reasons afield be permissible, see Hamlet's monologue (Hamlet, act 3, scene 1), where the "law's delay" is enumerated among the grounds for *felo de se.*

In this case application is made for mandamus to compel the settlement and signing of bills of exception over a year after the trial judge had refused to settle and sign them and over a year after relators knew of his refusal and we are of opinion the delay is ground

for refusing a peremptory writ, unless the excuse offered is effective. Is it? We think not. The only excuse deserving notice is, as we gather from relators' brief, that relators *hoped* that by suing out a writ of mandamus to settle the bill in the Mackenzie case, the defendants in all the other cases (should the writ be awarded) would stipulate to make that a test case and that the others would abide the final decision in the Mackenzie case on the merits. But a conclusive answer to that excuse is that no such stipulation was ever agreed to. To the contrary the cases were fighting lawsuits and parties litigant dealt at arms length with each other throughout. Relators were not *inops consilii,* but had the benefit of attorneys learned in the law. In this condition of things instead of suing out a timely writ of mandamus in the case as consolidated, *covering all nine bills of exception,* they elected to let eight of them sleep and used the Mackenzie case as a pioneer to blaze the way. If the experiment turned out extra hazardous, that hazard they voluntarily assumed by carrying their own risk. We say the cases were fighting lawsuits, because that part of respondent's return not heretofore set forth shows that relators' claim in the real estate in question was for a two-ninths interest in fifty-two acres of land deeded away by their ancestors in 1853, then of the value of a few hundred dollars but now incorporated in a great city and swollen in value to over a million dollars. This claim, arising out of an alleged minority of relators' female ancestors at the date of their said conveyance, had been lurking in ambush for nearly a half century, and, without a shadow of suggestion on our part as to its merits (for they are not before us), we may with propriety say that it would be expecting an uncommon amount of blandness on the part of defendants so assailed, to hope that, when smitten on one cheek with suits of that character, defendants would turn the other cheek to be further smitten by stipulations which had for their pur-

pose the easing of the burdens of claimants in the litigation. The record shows that the defendants, each for himself, were contesting every inch of the ground and, therefore, a "hope" for a stipulation had no substance or reason to be. He who knows all cannot be deceived.

We deem it proper to say that while the record contains some incidents denoting inadvertence upon the part of respondent, and while he should have allowed and signed the bills, yet we indulge him with the presumption that he acted under the solemnity of his oath to honestly and faithfully perform the duties of his high office, and, as has been said by this court in another case, so we say here, that this court owes too much respect to him and all the other circuit judges of the State to attribute to him or any of them a disposition to play fast and loose with justice, in the absence of cogent evidence to the contrary.

The peremptory writ is denied on account of the expiration of the official term of respondent and on account of laches.

All concur.