## THE STATE ex rel. CRANDALL v. McINTOSH et al., Board of Dental Examiners.

### In Banc, July 2, 1907.

1. **MANDAMUS: No Writ: Petition.** Where it appears that an alternative writ of mandamus was ordered to issue and was issued, but no such writ appears in the court files, but respondent appears and pleads, the petition will be treated as equivalent to the writ for purposes of demurrer, and, as a matter of grace, the one as standing for the other.

2. **UNCONSTITUTIONAL LAW: Right to Complain.** Relator has no right to complain of the unconstitutionality of a statute in so far as it affects others. And courts will not consider an assignment that the statute deprives others of their constitutional rights and that being the case it should be held unconstitutional as to relator. A court will not, at the instance of a citizen of this State, declare the act unconstitutional on the ground that it violates the rights of citizens of other states or of a foreign country or of a territory. It is necessary for him to show that his own constitutional rights, of person or property, are violated.

3. ———: **Mandamus to Compel Examination.** If the Dental Law of 1905 is unconstitutional and void, then relator is not entitled to a writ of mandamus to compel the Dental Board to give him an examination and, if he be found qualified, to issue to him a license to practice dentistry; for that act repeals all prior acts, and the board exists by reason of it alone, and if the act is void the board is illegal, its examinations without legal authority, and its licenses void.

4. ———: **Cannot be Raised in Mandamus.** As a general rule, courts will not declare a legislative act unconstitutional on an application for mandamus. Unless the ministerial duty is one imposed by law, and relator by his petition shows that he has

a specific, clear and legal right to the relief claimed, the constitutionality of the statute which denies him that relief, will not be determined in mandamus. Such conclusion can be arrived at only as a result of a solemn trial, if at all.

5. ———: **Vested Right.** A citizen of this State has no vested or property right in the practice of dentistry, however long he may have practiced it. It is one of those professions inseparably connected with the welfare of the people, and subject to regulation by the police power.

6. ———: **Mandamus: Substantial Matter: Demurrer.** A return by the Board of Dental Examiners to the alternative writ commanding the board to issue a license to relator, alleging the continued, open and wilful violation of the dental acts of 1883, 1897 and 1905, in practicing dentistry without a license, pleads substantive matter, going to the sound discretion to be exercised in issuing a peremptory writ of mandamus, and is not, therefore, demurrable.

7. ———: ———: **Laches.** A return pleading relator's manifold and long-drawn out laches, is not demurrable.

8. ———: **Dental Act: Diploma.** The provisions of the Dental Act of 1905, requiring an applicant for examination to have a diploma from some reputable dental college is not arbitrary and void. It only provides a means of determining the applicant's qualifications. (Per **Lamm, J.**)

## Mandamus.

Peremptory writ denied.

*Mytton, Parkinson & Crow* for relator.

(1) The demurrer to part of respondents' return should be sustained for the reason that the acts, if any, of relator, in violation of the prior laws, can only be punished as therein provided and can afford respondents no excuse in this case. Dent v. West Virginia, 129 U. S. 114. (2) The power of the State to regulate dentistry is based solely on the police power, and it has some limitations. State v. Tower, 185 Mo. 100. (3) We do not complain of the ruling announced by this court in State v. Doerring, 194 Mo. 398, but

that case, and the cases cited and followed by the court, do not apply to the facts in the case at bar. (4) Mandamus is relator's only remedy. State v. Doerring, 194 Mo. 398. (5) The act is unconstitutional and void because it prohibits a person taking an examination to ascertain his qualifications for practicing dentistry, however well qualified he may be, in the following cases: First. Where a young man has qualified himself to practice the profession out of college by his own industry and has not been licensed to practice by this or any other State in the United States. Second. Where a person learned in his profession comes to this State from a foreign land, becomes a citizen, and has not been licensed by any State or graduated from a college chartered by one of the States. Third. A person learned in the profession who has practiced for many years in a State that does not require a license and who has not graduated at a college, chartered by a State. Fourth. Where a person has graduated at a first-class college not chartered by one of the States of the Union and practiced his profession according to the laws of a territory or in the District of Columbia, however learned he may be. U. S. Const., 14th amendment; Const. of Mo., art. 2, secs. 4, 15, 30; art. 4, sec. 53; State v. Geavit, 65 Ohio St. 308; Dent v. W. Va., 129 U. S. 114; State ex rel. v. Mercantile Co., 184 Mo. 184; State v. Cantwell, 179 Mo. 263; St. Louis v. Galt, 179 Mo. 8; Barber Asphalt Paving Co. v. Ridge, 169 Mo. 376; State ex rel. v. Ashbrook, 154 Mo. 375; State ex rel. v. Washburn, 167 Mo. 680; State v. Julow, 129 Mo. 163; Dunne v. Railroad, 131 Mo. 1; State v. Walsh, 136 Mo. 400.

*W. E. Owen* for respondents.

(1) The demurrer to paragraphs three, four and five of respondents' return is not well taken. 1. So long as relator bids defiance to the law by openly prac-

ticing dentistry without a license, he cannot be heard to complain of the action of the dental board in refusing him a license. State ex rel. v. State Board of Health, 103 Mo. 30. 2. If relator, as he pleads, "is now and for many years has been fully qualified to and for twelve years consecutively next before the filing of this petition, has been engaged in the practice of dentistry and during said time has enjoyed a large practice among all classes of people," then he had ample and abundant opportunity to apply for and to receive an examination by the State Dental Board, and if found qualified, to become a duly licensed and registered dentist under the Dental Act of 1897. 3. For twelve years relator has practiced dentistry without a license, in violation of three separate dental acts. He never was a licensed practitioner of dentistry; and therefore never had, nor could he acquire, a legal right to practice, for one minute, without such authority. And it follows that he did not acquire a property or vested right in a profession that he was, during all that time, illegally engaged in practicing. (2) The dental act complained of is not violative of section 1, of article 14, of the Constitution of the United States, nor of the several provisions of the Constitution of the State of Missouri cited in relator's brief. State v. Davis, 194 Mo. 485; State v. Doerring, 194 Mo. 398; State ex rel. v. Board of Health, 103 Mo. 22; State ex rel. v. Lutz, 136 Mo. 633; State ex rel. v. Gregory, 83 Mo. 123; State ex rel. v. Sternberg, 96 Mo. 299; State ex rel. v. Garesche, 36 Mo. 261; State ex rel. v. Polk County, 29 Mo. 521; Simmons v. State, 12 Mo. 268; Austin v. State, 10 Mo. 591; Dent v. West Virginia, 129 U. S. 114; Hays v. Missouri, 120 U. S. 68; Barbier v. Connolly, 113 U. S. 32; Cooley on Torts, pp. 289, 290; Tiedeman on Police Power, secs. 87, 88; State v. Hathaway, 115 Mo. 36. (3) As a general rule a writ of mandamus will not issue where the right of the re-

lator depends on holding an act of the Legislature unconstitutional. 19 Am. & Eng. Ency. Law (2 Ed.), 763; Davis v. San Francisco, 63 Cal. 581; Wright v. Kelley, 43 Pac. 565; State v. Lanier, 47 La. Ann. 586; Smyth v. Titcomb, 31 Me. 272; State v. Douglass Co., 18 Neb. 506; People v. Stevens, 2 Add. Pr. Ns. (N. Y.) 348; Ex parte Lynch, 15 S. C. 524; State v. Haygood, 30 S. C. 524; League v. DeYoung, 2 Tex. 497; State ex rel. Ashbrook, 154 Mo. 384.

LAMM, J.—This case stands on relator's demurrer to part of respondents' return to an alternative writ of mandamus. It appears from our records that an alternative writ was ordered to go, and that one went; but no such writ appears in our files. Since respondents appeared and pleaded, we shall treat the petition as equivalent to the writ for the purposes of the demurrer. Its averments were presumably copied into the writ. Hence, as a matter of grace, the one may stand for the other. [State ex rel. v. Gregory, 83 Mo. l. c. 125.]

Relator alleges he was born in the United States, is a citizen of the United States, and a resident of the State of Missouri. That he is now a practicing dentist, has been one for many years and is a person of good moral character and reputation; that he has not been licensed by this or any other State of the United States to practice dentistry; that he has no diploma of any dental college organized under the laws of this or any other State of the Union; that during the aforesaid time he has been fully qualified for, and for twelve consecutive years next before the filing of his petition, he has been engaged in, the practice of dentistry and enjoyed a large practice among all classes of people; that in 1905 the Legislature of Missouri passed an act attempting to regulate the practice of dentistry in the

State of Missouri — relator here sets forth the provisions of section 8527 on page 213, Laws 1905 — and avers that respondents (naming them) are the duly-organized board of examiners provided by said act; that by the terms of the Act of 1905 it is unlawful for any person to practice dentistry in Missouri, however well qualified such person be, unless he possess the particular qualifications set forth in said act; that on the — day of April, 1906, relator made written application, duly sworn to by him, to said board for an examination as to his qualifications to practice dentistry, which application, omitting caption and signature, is in the following words:

"The undersigned respectfully represents to your honorable body that he is of good moral character and possesses sufficient knowledge, experience and practice, to successfully pass an examination to authorize your honorable body to issue to him a license to practice dentistry in the State of Missouri and in addition to possessing the necessary knowledge to pass an examination that would entitle him to a license, applicant has had many years experience in the practice of dentistry.

"Your petitioner states that he has no diploma from a college, that he has not been licensed to practice dentistry, in the State of Missouri, at any time and that he has not been licensed in any other State in the United States for the practice of dentistry.

"Your petitioner therefore respectfully prays the board to make an examination as to his qualifications and knowledge of dentistry so that a license may be issued, entitling your petitioner to practice dentistry in the State of Missouri."

That said application was refused by said board, through a communication from its secretary. Thereby relator's fee of ten dollars was returned and he was in-

formed that, under the facts disclosed in his application, he was not eligible to examination.

The petition grounds relator's right to relief on the theory that the Dentist Act of 1905 is unconstitutional in the following respects:

First. It violates the fourteenth amendment to the Federal Constitution, which provides, among other things, that "no State shall make or enforce any law which shall abridge the privileges or immunities of citizens of the United States, nor shall any State deprive any person of life, liberty or property without due process of law, nor deny to any person within its jurisdiction the equal protection of the laws." It avers said act is an attempt upon the part of the State of Missouri to abridge the privilege of relator as a citizen of the United States, in depriving him of property without due process of law, for that he is thereby denied the right and privilege of practicing a profession which he has qualified himself to practice by many years of labor and industry.

Second. That the act violates the rights of relator guaranteed to him by section 4, article 2, of the Constitution of Missouri, — providing "that all constitutional government is intended to promote the general welfare of the people; that all persons have a natural right to life, liberty and the enjoyment of the gains of their own industry." Relator avers that said act attempts to deprive him of the right to the enjoyment of the gains of his own industry, that he has spent many years of time and much labor to qualify himself for practicing dentistry, and it is attempted to deprive him of the right to practice his profession, for which he has fully qualified himself.

Relator alleges that the said dental act is in conflict with, and attempts to deprive him of his rights as guaranteed by section 15, article 2, of the Constitution of Missouri, which prohibits the General Assembly

from passing *ex post facto* laws, laws impairing the obligation of contracts, or retrospective in operation, or making any irrevocable grant of special privileges or immunities.

Relator alleges that said act is violative of his rights as guaranteed by section 30, article 2, of the Constitution of Missouri, to-wit, the constitutional provision that no person shall be deprived of life, liberty or property without due process of law; that relator having qualified himself by industry and labor, as aforesaid, being deprived without a hearing of the benefit of many years of labor and industry, deprived of earning a livelihood, is deprived not only of a hearing in court, but is refused a hearing by the board created by said act.

It is alleged the act in question is further unconstitutional and void because it is in conflict with section 53 of article 4 of the Constitution of Missouri. That section of the Constitution prohibits the passing of special and local laws in many particulars therein enumerated. It is alleged that the dental act grants the privilege to one class of citizens to practice dentistry in the State of Missouri, and denies the privilege to another class equally well qualified, if not better, and provides that a person cannot practice dentistry unless he obtains his knowledge in a certain manner, and denies the right to practice dentistry to all persons who did not obtain that knowledge in that manner.

It is furthermore averred that relator has paid all fees and dues demanded of him and required to be paid to said dental board; that he has fully complied with all provisions of said act, although it is unconstitutional; and that relator has been denied the rights and privileges accorded to other citizens of the State of Missouri and the United States, which said denial is arbitrary, without reason and is wholly unjust.

The petition closes as follows:

"That said act herein referred to is unconstitutional and void for the reasons herein set forth and is in direct conflict with all provisions of the Constitution herein referred to.

"Your petitioner respectfully represents that he has no remedy in the premises by or through ordinary process or proceedings at law, and he therefore prays this honorable court to award against said board a writ of mandamus, commanding and requiring it to permit your petitioner to take an examination for the purpose of ascertaining whether or not your petitioner is qualified to practice dentistry in the State of Missouri, and if so, to issue to your petitioner a license, authorizing your petitioner to practice dentistry in this State; and for such other process, orders and remedies as may to the court seem just and meet."

Respondents' return, omitting caption, is as follows:

"Respondents admit that they are members of and constitute the State Board of Dental Examiners for the State of Missouri.

"Respondents further admit that Dr. U. G. Crandall is now and has been for many years practicing dentistry and that he has not been licensed so to do by this or any other State in the United States of America, and that he has no diploma from any dental college organized under the laws of this or any other State of the United States; admit that the Legislature of the State of Missouri at its session, June 16, 1905, duly passed an act to regulate the practice of dentistry in the State of Missouri, and that said act is found in the Session Acts of 1905 at page 213; admit that the relator on the — day of April, 1906, made written application to said dental board for examination as to his qualifications to practice dentistry in the State of Missouri, and that said application is correctly set out

in said alternative writ of mandamus; admit that said board of dental examiners, acting under said dental law of 1905, and the authority therein vested in them, refused to examine relator as to his qualifications and proficiency as a dentist.

"2. Respondents deny each and every other allegation of matter and fact in the petition for an alternative writ of mandamus or in said alternative writ of mandamus not hereinbefore or hereinafter specifically admitted.

"3. For a further return, to said alternative writ of mandamus, respondents allege the facts to be that the relator has for the last six or eight years constantly been engaged in the practice of dentistry in the State of Missouri on his own account for a fee, salary and reward to him, the said U. G. Crandall, to be paid, without ever having any license or authority so to do, either under the Dental Act of 1883, or the Dental Act of 1897, or the Dental Act of 1905; that relator has so practiced said profession in open defiance of the laws of the State of Missouri, and is still doing so. And respondents say that the relator ought not now to be heard to complain of the act of said dental board nor of said dental act so long as he continues in the open and willful violation of said law.

"4. Respondents for a further return to said alternative writ of mandamus state that if it be true as relator pleads that 'he is now and for many years has been fully qualified to and for twelve years consecutively next before the filing of this petition, has been engaged in the practice of dentistry and during all of said time has enjoyed a large practice among all classes of people,' then relator has had ample and abundant opportunity under the Dental Act of 1897 up to the time the present dental act went into effect on June 16, 1905, to have applied to the then State Board of Dental Examiners for the State of Missouri, and to

have passed an examination and received a license to continue the practice in the State of Missouri. Respondents aver that relator during all that time made no effort whatsoever to become a regular licensed and practicing dentist in this State, though every opportunity was afforded him so to do before the Dental Act of 1905 went into force and effect.

"Wherefore, respondents say that relator ought not to be heard now, after his own laches and neglect, to complain of the action of the State Dental Board or of said Dental Act of 1905.

"5. For a further return respondents say that, for the reason that relator during all his practice of twelve years in the State of Missouri, has so practiced in open violation and defiance of the then existing laws of the State of Missouri, regulating the practice of dentistry, he never had nor could he acquire a legal right to so practice for one minute, nor could he acquire any property or vested right in such practice.

"6. For a further return to said alternative writ of mandamus respondents deny that the Dental Act of 1905 is unconstitutional and void for any of the reasons alleged in said alternative writ; but on the contrary, respondents aver that all of its provisions are a proper exercise of the inherent police powers vested in the State of Missouri.

"7. For a further return to said alternative writ of mandamus respondents say that if said Dental Act of 1905 is unconstitutional and void as alleged by relator in his petition and in said alternative writ of mandamus, then relator is violating no law in continuing the practice of dentistry in this State, and that his certificate of registration from the State Board of Dental Examiners of said State would be nugatory, of no effect, and confer no right upon relator, and that relator's application for said writ of mandamus to compel

said dental board to issue him such license or registration, should be dismissed.

"Respondents having made full return ask to be discharged with judgment for their costs."

On the filing of said return, relator lodged the following demurrer (omitting caption):

"Comes now the relator in the above-entitled cause and demurs to paragraphs three, four and five, of respondents return to the alternative writ of mandamus heretofore issued by this court.

"Respondents demur to paragraphs three, four and five for the reason that the allegations in said paragraphs three, four and five do not constitute any defense to the action of the board, and there is no provision either in the act of 1883, 1897, or 1905, punishing relator for the acts complained of in said paragraphs, even if the allegations are true."

In relator's argument the particular part of the Act of 1905 assailed is pointed out as a portion of section 8527 (Laws 1905, p. 214), as follows: "Any and all persons who desire to begin the practice of dentistry in this State after the passage of this act and who shall have a license from the dental board of another State or who shall have received a diploma from the faculty of some reputable dental college duly organized under the laws of this or any other State of the United States, shall have the right to apply to the dental board of this State for the examination as to their proficiency; and all successful applicants shall be licensed and registered by said dental board."

In relator's brief the unconstitutionality of the act is said to consist in four particulars; whereby, however well qualified a person may be, it prohibits him taking an examination to ascertain his qualifications for practicing dentistry, as follows:

"First: Where a young man has qualified himself to practice the profession out of college by his own

industry and has not been licensed to practice by this or any other State in the United States.

"Second: Where a person learned in his profession comes to this State from a foreign land, becomes a citizen, and has not been licensed by any State or graduated from a college chartered by one of the States.

"Third: A person learned in the profession who has practiced for many years in a State that does not require a license and who has not graduated at a college, chartered by a State.

"Fourth: Where a person has graduated at a first-class college not chartered by one of the States of the Union and practiced his profession according to the laws of a territory or in the District of Columbia, however learned he may be."

While, strictly, the case stands on demurrer to a part of the return, yet the tenor and effect of relator's brief and argument is broader than the mere demurrer. That brief and argument, in final analysis, present the deeper question, viz: Whether or not the petition states a cause of action? And the observations we shall make will partly run in that channel; because, it will be seen, respondents in their return in paragraph 7, in effect, advance the proposition that the petition is fatally defective in that if it be conceded, *arguendo*, that the Dental Act be unconstitutional, as contended by relator, then he has no legal right to an examination, and the writ will not go.

I. Relator in his second proposition asserts the act to be unconstitutional because a person learned in his profession as a dentist, coming into this State from a foreign land and who has not been licensed by any other State of the Union, and who has received no diploma from a college chartered by one of the states of the Union (and who perchance may or may not hold a diploma from a foreign college), is prohibited from

practicing his profession. In the third paragraph relator asserts and complains that the rights of citizens of other states, where no license was required and who have not graduated at a college chartered by a state, are impinged upon. By the fourth paragraph it is pointed out that a person graduating from a first-class college in a territory, or in the District of Columbia, and holding a diploma therefrom, is debarred the right of examination.

Attending to the foregoing complaints, the first and main question is: Has relator, who does not claim to belong to any one of the three classes of persons mentioned, the right to complain of the unconstitutionality of the Act of 1905 in so far as it affects them? Manifestly not. Because:

Courts do not go out of their way to declare a statute unconstitutional. [People v. Thompson, 155 Ill. l. c. 460.] When called upon to pronounce invalid an act of legislation which has been passed with all the forms and solemnities requisite to give it force of law, the question becomes one of high delicacy and discriminating use of judicial power. Chief Justice Shaw (in Wellington et al., petitioners, 16 Pick. l. c. 95) states the true rule to be that: "Courts will approach the question with great caution, examine it in every possible aspect, and ponder upon it as long as deliberation and patient attention can throw any new light on the subject, and never declare a statute void, unless the nullity and invalidity of the act are placed, in their judgment, beyond reasonable doubt." The proposition thus announced by that great jurist fits in with the settled doctrine of this court. [State ex rel. v. Warner, 197 Mo. l. c. 656.]

Continuing, Chief Justice Shaw says: "But whether or not a case can be imagined, in which an act of the Legislature can be deemed absolutely void, we think it quite clear that when such act is alleged

to be void on the ground that it exceeds the just limits of legislative power, and thus injuriously affects the rights of others, it is to be deemed void only in respect to those particulars, and as against those persons, whose rights are thus affected. Prima facie, and upon the face of the act itself, nothing will generally appear to show that the act is not valid; and it is only when some person attempts to resist its operation and calls in the aid of the judicial power, to pronounce it void, as to him, his property, or his rights, that the objection of unconstitutionality can be presented and sustained. Respect for the Legislature, therefore, concurs with well-established principles of law, in the conclusion that such act is not void, but voidable only; and it follows as a necessary legal inference from this position, that this ground of avoidance can be taken advantage of by those only who have a right to question the validity of the act, and not by strangers. To this extent only is it necessary to go, in order to secure and protect the rights of all persons against the unwarranted exercise of legislative power, and to this extent only, therefore, are courts of justice called on to interpose." Again, he said (p. 105): "Undoubtedly the general rule is, that a private individual can apply for a writ of mandamus only in a case where he has some private or particular interest to be subserved, or some particular right to be pursued or protected by the aid of this process, independent of that which he holds in common with the public at large; and it is for the public officers exclusively to apply, where public rights are to be subserved. [Rex v. Merchant Tailors' Co., 2 Barn. & Ad. 115.]"

Cooley fully adopts Chief Justice SHAW's views as good law. [Cooley's Const. Lim. (7 Ed.), 232.] And this court has stamped them with acceptance. [State v. Seebold, 192 Mo. l. c. 730.]

BURGESS, J., in the Seebold case, cites as sustain-

ing the same proposition, State v. Hathaway, 106 Mo. 236, where this court refused to pass on the constitutionality of a law when the point was raised on an insufficient indictment, saying: "We do not feel called upon to decide upon the validity of an act of the Legislature until the rights of some one can be affected by our judgment, and, until a good information or indictment is preferred against him, defendant is in-no danger." Continuing in the Seebold case, Burgess, J., says: "In Jones v. Black, 48 Ala. 540, it is said: 'Nor will a court listen to an objection made to the constitutionality of an act of the Legislature by a party whose rights it does not specially affect. An act of the Legislature will be assumed to be valid, until some one complains whose rights it invades; and it is only when some person attempts to resist its operation, and calls in the aid of the judicial power to pronounce it void, as to him, his property or his rights, that the objection of unconstitutionality can be presented and sustained.' [Shehane v. Bailey, 110 Ala. 308.] Only such persons as are in some way prejudiced by an unconstitutional law can complain of it. [Commonwealth v. Wright, 79 Ky. 22; State ex rel. Kellogg v. Currens, 111 Wis. 431.]"

Speaking to the same point, the learned authors of the Cyclopedia of Law and Procedure (8 Cyc. 791), say: "The denial of equal rights and privileges by discriminating legislation can be pleaded only by those who can show that they belong to the class discriminated against. This has been held in numerous cases, and the rule applies to all cases affecting civil rights of every kind, and to all cases in which property rights only are affected. White persons cannot question the validity of statutes imposing taxation upon colored persons, where the latter are not allowed to vote upon the question of such taxation, nor can white persons

contest the validity of statutes excluding colored persons from serving as jurors." In support of the general proposition, an array of authorities is cited; some holding that persons not interested in an act authorizing the extension of the city limits over adjoining lands, except agricultural, may not question its validity; others holding that neither a railroad company nor its receiver can question a claim set up as preferred on the ground that the act giving such claim a preference discriminates against the citizens of another state; others holding that a private corporation not affected cannot be allowed to plead the invalidity of an act in behalf of municipal corporations; others holding that a male defendant convicted of a crime may not question the unconstitutionality of an act excluding women from serving as jurors. [See, also, State v. Barr, 78 Vt. 97; In re O'Brien, 29 Mont. 530; Davidson v. Von Detten, 139 Cal. 467.]

The sum of the matter is, not that his neighbor is hurt, but that a litigant himself must be hurt by the unconstitutional exercise of power before he may vex the judicial ear with complaints. No one may demand judicial consideration of a question not singular to his individual rights of person or property as contradistinguished from his neighbor's. "We cannot," said the Supreme Court of Wisconsin (State *ex rel.* Kellogg v. Currens, 111 Wis. l. c. 442), "set aside the acts of the Legislature at the suit of one who, suffering no wrong himself, merely assumes to champion the wrongs of others." It follows that the opportune time for us to consider and pass judgment on the constitutionality of the Dental Act of 1905 (in the three particulars now under consideration) will be when some foreigner, well equipped to practice dentistry in his own country, whether armed with a diploma or without a diploma from a foreign college, changes his residence, immigrates to Missouri, casts his lot

with her people, and in a proper case challenges the law; or when some one who holds a diploma from a college in the District of Columbia or a territory of the United States immigrates to Missouri and demands the right to pass an examination and register as a dentist; or when some citizen of the United States from some State in the Union (if any such State there be) where dental boards are unknown, who has there practiced the profession of dentistry and asserts his qualification to continue, comes into this State, and, wincing because galled by the Act of 1905, complains that it is unconstitutional.

II. This leaves for consideration, and brings us to, the first proposition in relator's brief. Relator is a citizen of Missouri. Fairly construed, the allegations of his petition are: that he has practiced dentistry in this State for many years; that he is worthy, prepared, and well qualified; that he has no diploma from any college where dentistry is taught as provided by the Act of 1905; that, needing none, he wants none; that he is entitled, under his natural rights as a man and a citizen of Missouri, to be examined and to receive a license if found qualified. He says he is denied an examination; and the relief he asks from this court is that a peremptory writ of mandamus issue to compel the board to examine him. He plants himself, *ex industria,* squarely and only upon the proposition that the Dental Act is unconstitutional and, therefore (mark the deduction) that he is entitled to the writ and to an examination. But can a peremptory writ of mandamus compelling an examination go on the ground the act is unconstitutional? We think not. Because:

The Act of 1905 repeals all former acts. It creates a dental board of examiners. Observe, that outside of that act such board has no *status* or existence in the law. That act, too, creates the duties of such board; and within the circumference of those duties it leaves

room for the play of some discretion, some flexibility. But outside of its prescribed, statutory duties relating to examination the board of dental examiners had no duty whatever to perform and no legal right to perform any. [State ex rel. Johnston v. Lutz, 136 Mo. l. c. 639.] That act contemplates that dentists, theretofore licensed by a previous board, may obtain a renewal license by taking steps prescribed by section 8527. Relator does not claim to be of that class. He does not ask a renewal license. The first part of said section requires an examination by the board of those who desire "to begin the practice of dentistry in this State after the passage of this act." But the section is inflexibly unelastic in metes and bounds to the right of examination. It limits the right of the board to an examination of those holding a diploma from some reputable dental college, organized under the laws of this or any other State, and of those who hold a license from the dental board of another State. Mark the fact that the statute limits the right to a license to such persons of those two classes as pass a successful examination. It nowhere imposes a general duty to examine. It nowhere creates a general right in all persons to a license who pass an examination. With these limitations in the very warp and woof of the act itself, it follows that if the law be unconstitutional, then relator has no right to a moving writ of mandamus to compel an examination; for with the law invalid (as relator argues) the board has no legal duty to examine anyone and no right to license anyone. An unconstitutional law is the same as no law at all. Out of nothing, nothing comes. (*Ex nihilo, nihil fit.*) Relator must put his finger on a statute entitling him to examination. But what avails a statute to relator, when in the very act of putting his finger on it, he rubs it out to get at his relief? That would be the same as to burn a bridge on which one must cross (or stay where he is). A mere

statement of existing conditions involves relator in a fatal dilemma; for with the law as it stands, relator is not entitled to his writ. Without the law, he is in the same fix; since mandamus does not cover a *casus omissus*. [State *ex rel.* v. Cook, 41 Mo. 593.]

The question is not new to the courts. The Supreme Court of New Hampshire held it in judgment in Hart v. Folsom, 70 N. H. 213. It was there laid down as sound law that (quoting from the syllabus) "the constitutionality of a statute cannot be questioned by one who seeks to avail himself of its provisions." So in State *ex rel.* Kellogg v. Currens, *supra,* it was said: "His [relator's] only right to a certificate depends upon the validity, therefore, of a statute containing this provision, and he cannot be heard to assail its validity."

In United States ex rel. Siegel v. Board of Liquidation of New Orleans (74 Fed. 489), the Circuit Court of Appeals for the fifth circuit held in judgment the right of a citizen of the empire of Germany to a writ of mandamus to compel said board to perform its duty in funding certain judgments held by him against the city of New Orleans. The respondent answered that the law creating the Board of Liquidation made no provision for the funding of judgments of the character in question; that such funding was contrary to the terms of the law. To parry the force of this answer, relator insisted the legislation by which his class of claims was excluded from the benefit of the funding scheme was contrary to the Constitution of the State of Louisiana, and, therefore, void. Speer, J., in disposing of that contention, *arguendo,* used language commending itself as applicable to the point now under consideration in the case at bar, *viz.:* "Suppose, however, it be conceded that this is true. The Legislature designed, and afforded a special scheme for the satisfaction of debts of a certain class, with a provision

expressly precluding the debts like that belonging to relator from participation in the beneficial adjustment. If we hold that the excluding clause is null, because in violation of the Constitution of the State, it follows obviously that, as to claims like those of relator, the Legislature has not taken any action at all. The relator is then left where the Legislature found him.'' [See, also, State *ex rel.* Winnie v. Stoddard, 25 Nev. l. c. 459.]

III. But looked at from another standpoint, the same conclusion must be reached.

It has been held that courts, as a general rule, will not declare an act unconstitutional in an application for a mandamus. It may be said to be somewhat unphilosophical to approach the consideration of a grave constitutional question on a mere motion for such an ''unreasoning'' and inflexible writ as a mandamus; and that such conclusion should be arrived at only as the result of a solemn trial, if at all. See Wright v. Kelley, 4 Idaho 624, where the cases are considered and where it is announced that: ''Mandamus should not be issued, as a general rule, in cases where the right of the relator depends on holding an act of the Legislature unconstitutional .'' [19 Am. and Eng. Ency. Law (2 Ed.), 763.] In People *ex rel.* Bradley v. Stephens, 2 Abb. Pr. (N. S.) l. c. 354, INGRAHAM, J., said: ''I may add, also, to the reasons above stated, that it is rarely, if ever, proper to award a mandamus in a case in which it can only be done by declaring an act of the Legislature unconstitutional. That should be done in a more solemn mode of adjudication, upon a full trial, and not on an ordinary motion, such as this.''

But there is another side. There are cases in mandamus declaring a statute unconstitutional. For example, State *ex rel.* Kinsey v. Messerly, 198 Mo. l. c.

356; State *ex rel.* Rodes v. Warner, 197 Mo. 650; and many others might be cited of the same import. It would be unprofitable to differentiate the cases and strive to announce a safe rule on the proposition, and we need not do so in this case, but attend to another phase, viz.: BLACKSTONE says, generally, that mandamus "issues in all cases where a party hath a right to have anything done, but hath no other specific means of compelling its performance." [3 Bl. *110.] In State *ex rel.* Goodloe v. Lanier, 47 La. Ann. 1. c. 569, the safe rule was guardedly announced that: "Mandamus does not lie unless the character of the act is *ministerial* and *imposed by law."* In the celebrated case of State of Mississippi v. Andrew Johnson, President of the United States, 4 Wall. 1. c. 498, a ministerial duty, such as would be enforced by a court, was defined as follows: "A ministerial duty, the performance of which may, in proper case, be required of the head of a department, by judicial process, is one in respect to which nothing is left to discretion. It is a simple, definite, duty, arising under conditions admitted or proved to exist, *and imposed by law."*

Reasoning from such postulates, it has been well held that a peremptory writ of mandamus will not issue in cases of doubtful right. [State *ex rel.* v. Buhler, 90 Mo. 560; 19 Am. and Eng. Ency. Law (2 Ed.), 727; State *ex rel.* v. Gibson, 187 Mo. 553.] And held that a litigant seeking relief by mandamus must allege and prove that he has a specific right to the relief claimed. [State *ex rel.* Doud v. Lesueur, 136 Mo. 452.] And that he must show himself possessed of a clear and legal right to the remedy he seeks in order that he may maintain his position. [State *ex rel.* Thomas v. Williams, 99 Mo. 291; State *ex rel.* Attorney-General v. Boonville Bridge Co., 206 Mo. 74; State *ex rel.* Gazzalo v. Hudson, 13 Mo. App. 61; State *ex rel.* Brown v. McIntosh, *infra* 616, and cases cited.]

Giving weight to the foregoing, relator's case is foundationless; for it does not appear by the alternative writ or by the averments of his petition that he seeks the performance of a ministerial duty "imposed by law." To the contrary, he seeks to compel an examination and fails to show by his pleading that he has "a specific" or "a clear and legal" right to one.

IV. But leaving the broader phases of the case and considering the demurrer as a demurrer, it should be overruled; because:

The third paragraph of the return struck at by the demurrer alleges the continued, open and wilful violation of the dental acts of 1883, 1897 and 1905, on the part of relator. That this part of the return pleads substantive matter, going to the sound discretion to be exercised in issuing a peremptory writ of mandamus, has been held in cases under these and kindred statutes. It is, therefore, not demurrable. [State *ex rel.* Hathaway v. Board of Health, 103 Mo. l. c. 30; State *ex rel.* Brown v. McIntosh, *infra* 616.]

The fourth paragraph struck at pleads relator's manifold and long drawn-out laches. That laches is an element instructing courts and going to the exercise of their discretion in issuing a peremptory mandamus (i. e., a discretionary writ), is beyond question. [State *ex rel.* v. Gibson, 187 Mo. l. c. 554, and cases cited.]

The fifth paragraph struck at pleads matter in answer to relator's averments in substance setting up his vested or property right in the practice of the profession of dentistry. That relator, critically speaking, had no such vested right is held in an unbroken line of decisions by this court, cited in State *ex rel.* Brown v. McIntosh, supra, and is so held in all well-considered cases under statutes regulating the practice of those professions inseparably connected with the welfare of the people, and subject to regulation by the police power.

V.   While not necessary to a decision of the case, it is not entirely amiss to say that relator's learned counsel with impassioned eloquence assail that provision of the Act of 1905 requiring an applicant for examination to have a diploma from the faculty of some reputable dental college, *etc.*   The argument proceeds on the assumption that knowledge is the main thing, and that the State has no business with the mere method of acquiring that knowledge.   It may be conceded that knowledge in the science of dental surgery is the main thing — the capital *desideratum;* but the argument blinks a major fact, *viz.*, that the State is vitally interested in another thing, to-wit, that its governmental agency, having in charge the subject-matter, to-wit, the board of dental examiners, should themselves have knowledge of that knowledge. The plan adopted by the statute for attaining that sensible end was that, in the first place, the applicant should have a *diploma,* or a certificate from the Dental Board of another State; and, in the second place, should stand an examination.   What is the purport of a diploma?   In State *ex rel.* Granville v. Gregory, 83 Mo. l.c. 130, SHERWOOD, J., points out that among the incidents of incorporated colleges "are. those of conferring degrees upon those of the students who, having pursued the curriculum, have graduated, and the issuance to them of diplomas bearing evidence of that fact.   This has been done by such *institutions* since the thirteenth century.   [2 Kent's Com., 270.] A diploma is said to be 'a document bearing record of a degree conferred by a literary society or educational institution.'   [Webst. Dict.]   In short, a statement in writing, under the seal of the institution, setting forth that the student therein named has attained a certain rank, grade or degree in the studies he has pursued."   A free, self-governing people are entitled to the greatest precaution and care of the State in ad-

vancing their general welfare in matters of health. Accordingly, the Act of 1905, sec. 8527, points out what a reputable dental college shall be: "1st. It shall be chartered under the laws of the State in which it is located and operated, and shall be authorized by its charter to confer the degree of doctor of dental surgery or doctor of medical dentistry. 2d. It shall deliver annully a full course of lectures and instructions by competent faculty and corps of instructors in the following subjects: Anatomy, chemistry, physiology, histology, materia-medica, therapeutics, dental metallurgy, pathology, bacteriology, operative dentistry, prosthetic dentistry, crown and bridge work and oral surgery and hygiene. Said course of instructions to consist of not less than three terms in separate academic years and of not less than thirty weeks of six days each for each term. 3d. The apparatus and equipment in each said dental college or institution shall be ample and sufficient for the ready and full teaching of the above-named subjects."

A certificate from the faculty of a college attesting that its bearer as a student, day in any day out, with scholarly patience and research, had equipped himself with the technical knowledge taught in such college as contemplated by the foregoing statute, is of pronounced significance. It comes from the hands of honorable and competent men; it pledges the honor of the college that its holder attended lectures, possessed himself of the learning of his text-books, passed his term and final examinations with credit under the eye of his preceptors, and was capable of rendering professional services to the people in accordance with the rules of his art; that he was, in the language of State *ex rel.* v. Gregory, *supra,* no pretender, no "empiric, mountebank, charlatan or quack." It is manifest that no practicable examination by a dental board could go quite so deep or be so searchingly broad

in meaning as an honest well-earned diploma of that sort. The law places its benediction on such a diploma, assigning it no trifling office and public sentiment tends to support that theory. The law says it may be received in evidence by the board as standing for all it is worth; and then the board, by way of check and as a capsheaf on the statutory scheme, may examine the applicant to see whether the seeds of information sown in his mind as a student fell by the wayside, or fell on stony ground, or had been lost by forgetfulness as the seeds in the parable were devoured by the birds of the air. We find no legal fault with the requirement of a diploma. We find no legal fault with the requirement of an examination by the board. We find no legal fault with the legislative theory that it was largely impracticable for an applicant to acquire in the first instance suitable skill in technique and adequate professional knowledge by himself or in an office. The line has to be drawn somewhere; and so long as it was not chalked out whimsically and arbitrarily at an unreasonable place, it was well enough— the Legislature having plenary power.

Measurably, the same with other reasons underlie and support the alternative requirement of a certificate from a dental board of another State. It is apparent that no scheme should overlook the fact that Missouri is but one of many States in this Union. Some comity must be provided for and no legislation could be enacted so perfect as to avoid the hardships of a hard case such as within the imagination or hypothesis of ingenious counsel.

Finally, in effect, learned counsel argue that the limitations and classifications imposed by the statute are not germane to the subject-matter of dentistry. That to say a dentist shall not be examined or licensed who holds no college diploma or no certificate from another dental board is as unreasonable as to put up

the bars to one who had gray eyes or red hair or who stood, say, five feet eight inches in his socks — all restrictions of that ilk, it is argued, are whimsical, unreasonable, arbitrary, and hence, plainly outside the legitimate province of legislative control, and void. But is a statute calling for a certificate from a reputable dental college (or other like voucher or safeguard) attesting the bearer to be proficient in the learning and technique of his profession, obnoxious to the criticism that such requirement is not germane? We think not. If, peradventure, the law had actually put a ban on gray eyes or fiery locks—if it had required successful applicants to array themselves in Highland costume and perform in a pleasing way on a bagpipe, or believe (without mental reservation) in each of the five points of Calvinism and a protective tariff, or chisel an Aphrodite as cunningly as Praxiteles, or submit a thesis on springing uses or the Rule in Shelly's Case—we say if the statute had prescribed such malapropos qualifications in dentistry as that, then a question would be presented not here now.

Statues not differing in principle from the Act of 1905 exist in many States, and a careful investigation shows that the trend of the judicial mind has been to sustain them against attacks substantially the same as made in this case on that act. For example, see State *ex rel.* Kellogg v. Currens, 111 Wis. 431; Gothard v. People, 32 Colo. 11; Kettles v. People, 221 Ill. 221; Wilkins v. State, 113 Ind. 514; State v. Heath, 125 Iowa 585; State v. Vandersluis, 42 Minn. 129; State *ex rel.* v. Webster, 150 Ind. 607; People v. Phippin, 70 Mich. 6. And see a current of authority in our own reports.

The demurrer must be overruled; and, as the cause stands submitted on demurrer, the alternative writ is quashed and a peremptory one is denied.

*Gantt, C. J.,* concurs in result and in all but fifth paragraph; as to that he expresses no opinion; *Bur-*

*gess, J.*, concurs; *Valliant, J.*, concurs in result and in paragraphs 2, 3 and 4 and dissents from paragraphs 1 and 5; *Fox, J.*, concurs in result, expressing no opinion as to the constitutionality of the parts of the act challenged, but holding that even conceding the act unconstitutional in the particulars suggested by relator, then the board is without authority to make an examination, hence they cannot be compelled to make one; *Graves, J.*, concurs in result and in everything except the fifth paragraph and on that he expresses no opinion; *Woodson, J.*, did not sit.